08-4030-pr
Dillon v. Conway

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2010

(Argued: April 6, 2011)                              Decided: April 26, 2011 )

Docket No. 08-4030-pr

CHAUNCEY DILLON,

*Petitioner-Appellant*,

v.

SUPERINTENDENT JAMES T. CONWAY, ATTICA CORRECTIONAL FACILITY,

*Respondent-Appellee*.

Before: WINTER, CABRANES, and LOHIER, *Circuit Judges*.

Appeal from a judgment of the United States District Court for the Southern District of New York (George B. Daniels, *Judge*), granting respondent Superintendent's motion to dismiss the petition for a writ of habeas corpus on the ground that the petition, submitted one-day late, was barred by the one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1)(A). We hold, under the totality of circumstances presented, that extraordinary circumstances prevented the filing of the petition on time, and that the District Court erred in determining that equitable tolling did not apply. Accordingly, we vacate its judgment.

Vacated and remanded.

MICHELE HAUSER, New York, NY, *for petitioner-appellee,*

SARA M. ZAUSMER, Assistant District Attorney (Cyrus R. Vance, Jr., District Attorney, *on the brief*, Karen Schlossberg, Assistant District Attorney, *of counsel*), Office of the District Attorney, New York County, New York, NY, *for respondent-appellee.*

PER CURIAM:

Petitioner-appellant Chauncey Dillon ("Dillon") appeals from an August 4, 2008 order of the United States District Court for the Southern District of New York (George B. Daniels, *Judge*), granting the motion of respondent-appellee Superintendent James T. Conway ("Conway") of Attica Correctional Facility ("Attica C.F.") to dismiss Dillon's petition for a writ of habeas corpus ("the Petition") on the ground that the Petition was barred by the one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1)(A).[1]

## BACKGROUND

The facts in this case are not in dispute. On December 17, 2004, after a jury trial, the New York Supreme Court, New York County, entered a judgment of conviction against Dillon for Murder in the Second Degree, Assault in the First Degree, Attempted Robbery in the First Degree, two counts of Criminal Possession of a Weapon in the Second Degree, two counts of Criminal Possession of a Weapon in the Third Degree, and Reckless Endangerment in the First Degree.[2] The convictions arose

---

[1] The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), states, in relevant part:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of . . . the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review[.]

28 U.S.C. 2244(d)(1)(A).

[2] Dillon was convicted of violating N.Y. Penal Law § 125.25[3] (murder in the second degree); § 120.10[4] (assault in the first degree); §§ 110.00, 160.15[2] (attempted robbery in the first degree); § 265.03[2] (criminal possession of a weapon in the second degree); § 265.02[4] (criminal possession of a weapon in the third degree); and § 120.25

from Dillon's participation in a violent confrontation between the passengers of two cars following a collision in 2003. Dillon was sentenced principally to an indeterminate prison term of 30 years to life.

Dillon, represented by an attorney, appealed his conviction to the Appellate Division, First Department, claiming that (1) the prosecutor had placed inadmissible hearsay evidence before the jury during trial; (2) the prosecutor had impermissibly vouched for the credibility of a witness and improperly commented on Dillon's post-arrest silence in discussing a statement made by Dillon to the police; and (3) the trial court had erred in its instructions to the jury. On June 6, 2006, the Appellate Division unanimously affirmed Dillon's conviction. *People v. Dillon*, 815 N.Y.S.2d 574 (1st Dep't 2006). Dillon applied for leave to appeal the Appellate Division's judgment to the New York State Court of Appeals. On August 31, 2006, the Court of Appeals denied Dillon's application, *People v. Dillon*, 7 N.Y.3d 812 (2006); accordingly, his state court conviction became final ninety days later, on November 29, 2006.[3]

In order for his federal habeas petition to be timely, Dillon was required to file it on or before November 29, 2007, unless the statute of limitations was equitably tolled.

While incarcerated, Dillon had another inmate to help him draft a *pro se* habeas petition, which he could have and would have timely filed before November 2007. In or around August 2007, however, Dillon retained an attorney, Richard M. Langone ("Langone"), to represent him in post-conviction collateral proceedings, and specifically to prepare a petition for habeas corpus to the District Court arguing that Dillon had received ineffective assistance of counsel in the proceedings before the

---

(reckless endangerment in the first degree).

[3] In *Pratt v. Greiner*, we explained that "[a] conviction becomes final for purposes of 28 U.S.C. § 2244(d) upon expiration of the ninety-day period to petition for a writ of *certiorari* to the United States Supreme Court." 306 F.3d 1190, 1195 n.1 (2d Cir. 2002). Dillon did not petition for a writ of certiorari to the United States Supreme Court.

New York trial and appellate courts. When Langone was retained, he was in private practice with one law partner who, soon afterwards, left the firm, saddling Langone with "approximately twenty active cases." Joint Appx. at 19, 22-23. According to Langone, because of this workload, he was not able to begin working on Dillon's petition for habeas corpus until mid-October 2007. Joint Appx. at 19.

On November 13, 2007, Langone flew to Attica C.F. with a 16-page habeas corpus petition for Dillon to sign in front of a notary. By affidavit, Langone affirms that during the visit he and Dillon spoke about the statute of limitations for filing the petition for habeas corpus under AEDPA and that Dillon

> specifically asked me not to wait until the last day to file the petition. I told him that I would not wait until the last day to file the petition . . . . On November 13, 2007, I left Attica prison with his verified petition in my hand and with him expecting that I would file it with [the District Court] before November 30th, the date I believed was the last day to file the petition.

Joint Appx. at 72 (some emphases supplied, some in original). Following this meeting, Langone continued to work on a lengthy memorandum of law to accompany the Petition.

Langone apparently operated under the incorrect assumption that the AEDPA statute of limitations begins to run on the day *after* a petitioner is denied leave to appeal to the New York Court of Appeals—that is, he believed he had until November 30, 2007 to file the Petition. According to the Report and Recommendation ("R & R") of Magistrate Judge Douglas F. Eaton, whose R & R was adopted by Judge Daniels, this assumption resulted from a misinterpretation of an opinion of the United States District Court for the Eastern District of New York, *Geraci v. Senkowski*, 23 F. Supp. 2d 246, 253 (E.D.N.Y. 1998), *aff'd*, 211 F.3d 6 (2d Cir. 2000). In *Geraci*, the District Court held, *in different circumstances*, that "[t]he [AEDPA] statute of limitation began running . . . the day *after* the petitioner was denied leave to appeal." *Id.* Langone had worked as a paralegal for one of the parties in *Geraci v.*

4

*Senkowski*, and he allegedly relied upon that experience in determining the date by which the Petition was due.

In addition, for all of October and most of November, Langone, at Dillon's request, spent considerable time tracking down a copy of a videotape that Dillon believed would be useful in preparing the petition and would exonerate him.[4] Langone's attempts to find the videotape reportedly took longer than expected because the Legal Aid Society initially sent him the wrong videotape. Due to the poor quality of the videotape, when Langone finally obtained the correct tape he needed to hire an "enhancing service" to render its contents discernible. During this period, Dillon's wife called Langone several times on behalf of Dillon to ask if he had filed the Petition and to report that "Dillon was worried about running out of time." Joint Appx. at 20-21. Langone repeatedly told Dillon's wife that he was "working on the papers" and "not to worry." *Id.*

On November 30, 2007, Langone filed the Petition with an accompanying memorandum of law and appendix. On January 31, 2008, Conway moved to dismiss the Petition as untimely under AEDPA's one-year statute of limitations. *See* 28 U.S.C. § 2244(d)(1)(A). Following oral argument, Magistrate Judge Eaton issued the R & R in which he recommended that the District Court grant Conway's motion to dismiss the Petition as untimely.[5] Langone subsequently submitted objections to the R & R, claiming that (1) confusion existed regarding the application of the one-year statute of limitations under AEDPA; (2) his particular circumstances warranted equitable tolling for one-day; (3)

---

[4] According to Langone, "Dillon believed that the video would demonstrate to [the District Court] that he was not involved in the fight that led to the shooting, and that he was not in possession of a gun during the altercation on the night of the incident." Joint Appx. at 72.

[5] The Magistrate Judge also found that Dillon was not entitled to equitable tolling under the "actual innocence exception" to AEDPA's statute of limitations. *See House v. Bell*, 547 U.S. 518 (2006). **[A 74-77]** We reserve judgment on this aspect of the R & R and focus specifically on the question of whether equitable tolling was justified under the "extraordinary circumstances" test.

his assurance that he would file a timely petition, coupled with his miscalculation of the expiration of AEDPA's statute of limitation, had severed the "agency relationship" between Langone and Dillon; and (4) the combination of Dillon's financial inability to hire counsel at an earlier point and Langone's heavy professional burdens following the departure of his law partner, and Langone's diligent efforts to obtain evidence that Dillon believed would demonstrate his actual innocence, qualified as "extraordinary circumstances" compelling equitable tolling for one day.

In its Memorandum Decision and Order of August 4, 2008, *see Dillon v. Conway*, No. 09-CV-10728, 2008 WL 2971986 (S.D.N.Y. Aug. 4, 2008), the District Court adopted the R & R of Magistrate Judge Eaton in its entirety. This appeal followed.

## DISCUSSION

The District Court determined, as a matter of law, that equitable tolling was not appropriate because the record did not reveal the requisite "extraordinary circumstances." The existence of "extraordinary circumstances" sufficient to justify equitable tolling under § 2244(d) is a question of law, and we therefore review the judgment of the District Court *de novo*. *Belot v. Burge*, 490 F.3d 201, 206 (2d Cir. 2007) ("If a district court denies equitable tolling [because] . . . the governing legal standards would not permit equitable tolling in the circumstances—that aspect of the decision should be reviewed *de novo*.").

The AEDPA statute of limitations "does not set forth 'an inflexible rule requiring dismissal whenever' its 'clock has run.'" *Holland v. Florida*, 130 S. Ct. 2549, 2560 (2010) (quoting *Day v. McDonough*, 547 U.S. 198, 205 (2006)). Indeed, in *Holland* the Supreme Court concluded, as had all eleven Courts of Appeals to consider the question, that § 2244(d) "is subject to equitable tolling in appropriate cases." *Id.* The Court went on to conclude that § 2244(d) may be tolled "only if [the

6

petitioner] shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 130 S. Ct. 2549, 2560-62 (2010) (internal quotation marks omitted). As a result, the Supreme Court concluded that while "a garden variety claim of excusable neglect, such as a simple miscalculation that leads a lawyer to miss a filing deadline, does not warrant equitable tolling," *id.* at 2564 (internal citations and quotation marks omitted), the Eleventh Circuit erred in concluding that "'pure professional negligence' on the part of a petitioner's attorney . . . can never constitute an 'extraordinary circumstance'" sufficient to justify equitable tolling, *id.* at 2559 (quoting *Helton v. Sec'y for Dep't of Corrs.*, 259 F.3d 1310, 1339 (11th Cir. 2001); *cf. Smaldone v. Senkowski*, 273 F.3d 133, 138 (2d Cir. 2001) (stating that attorney error alone is "inadequate to create the 'extraordinary' circumstances equitable tolling requires."); *Geraci v. Senkowski*, 211 F.3d 6, 9 (2d Cir. 2000), *superseded by statute on other grounds,* N.Y. Crim. Proc. Law § 450.90(1) (holding that attorney's misunderstanding of the period for which a claim remained "pending" did not warrant equitable tolling).

As the Supreme Court has long recognized, the "exercise of a court's equity powers . . . must be made on a case-by-case basis." *Holland*, 130 S.Ct. at 2563 (quoting *Baggett v. Bullitt*, 277 U.S. 360, 375 (1964)). The "flexibility" inherent in "equitable procedure" is necessary "to meet new situations [that] demand equitable intervention" with the understanding that a court of equity must "exercise judgment in light of prior precedent, but with awareness of the fact that specific circumstances, often hard to predict in advance, could warrant special treatment in an appropriate case." *Id.* (internal quotation marks omitted; alteration in original). Thus, rejecting the notion that rigid and nonvariable rules must guide courts of equity, the Supreme Court concluded that "given the long history of judicial application of equitable tolling, courts can easily find precedents that can guide their judgments." *Id.* at 2563.

Indeed, turning to our own Court's long history of applying equitable tolling, we conclude that—while the question is a close one—equitable tolling was in fact appropriate in the circumstances presented. In the first instance, there is no question that Dillon "has been pursuing his rights diligently" as required by *Holland*. *Accord, Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000) ("[i]f the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing."). The question then, is whether the facts of this case present sufficiently "extraordinary circumstances" to warrant equitable tolling. We conclude that they do.

As a general matter, we set a high bar to deem circumstances sufficiently "extraordinary" to warrant equitable tolling. Whether a circumstance is extraordinary is based not on "how unusual the circumstance alleged to warrant tolling is among the universe of prisoners, but rather[,] how severe an obstacle it is for the prisoner endeavoring to comply with AEDPA's limitations period." *Diaz v. Kelly*, 515 F.3d 149, 154 (2d Cir. 2008). Instances which justify equitable tolling include a corrections officer's intentional confiscation of a prisoner's petition shortly before the filing deadline, *see Valverde*, 224 F.3d at 133, a state appellate court's failure to inform a prisoner that his leave to appeal was denied, *see Diaz*, 515 F.3d at 154-55, and, perhaps most relevantly, an attorney's failure to file a habeas petition on behalf of a prisoner, despite explicit directions from the prisoner to do so, *see Baldayaque v. United States*, 338 F.3d 145, 150-53 (2d Cir. 2003). Indeed, in *Baldayaque,* we noted that while "attorney error *normally* will not constitute the extraordinary circumstances required to toll the AEDPA limitations period . . . at some point, an attorney's behavior may be so outrageous or so incompetent as to render it extraordinary." 338 F.3d at 152 (emphasis in original).

8

In *Baldayaque*, we concluded that "[b]y refusing to do what was requested by his client on such a fundamental matter," that is, filing a § 2255 petition, Baldayaque's attorney "violated a basic duty of an attorney to his client" and created a sufficient obstacle to justify equitable tolling. 338 F.3d at 152. We thus distinguished *Baldayaque* from *Smaldone v. Senkowski*, 273 F.3d 133, 138-39 (2d Cir. 2001), and *Geraci v. Senkowski*, 211 F.3d 6, 9 (2d Cir. 2000), in which we held that an "ordinary mistake" made by counsel regarding "the rules applied to the deadlines for filing of habeas petitions" did not justify equitable tolling. *Baldayaque*, 338 F.3d at 152. *Baldayaque*, unlike the prior cases, involved an attorney who willfully ignored the express instructions of his client, did not conduct any legal research on his client's behalf, and never spoke to or met with his client. We thus had no trouble concluding that such an "extreme situation" was precisely the sort of dereliction of professional responsibility necessary to justify equitable tolling. *Id.*

Like the petitioner in *Baldayaque*, Dillon "did everything that could have been expected of him and . . . went to extraordinary ends to have a [petition timely] filed on his behalf." *Id.* at 151 (internal quotation marks omitted). It is clear that Dillon and his wife were persistent in maintaining contact with Langone to insist that he file the petition ahead of the deadline. Even more significantly, Dillon, who was attempting to prove his actual innocence, urged Langone not merely to file a timely petition but *specifically* to avoid the possibility of a single-day error by "not [ ] wait[ing] until the last day to file the petition." Joint Appx. at 20. Langone, in each conversation, assured Dillon and Dillon's wife that he "would file the petition prior to November 30, 2007." Dillon relied on his counsel's assurances that the petition would be filed prior to the deadline. Although miscalculating a deadline is the sort of garden variety attorney error that cannot *on its own* rise to the level of extraordinary circumstances, *Holland*, 130 S. Ct. at 2564, *Baldayaque*, 338 F.3d at 152, Dillon's case involves more than a simple miscalculation. Langone in effect admitted affirmatively and knowingly *misleading* Dillon by promising

9

him that he would file the petition before November 30, 2007. Joint Appx. at 20. Langone breached that promise when he failed to follow his client's instruction, with disastrous consequences that Dillon could neither have foreseen nor prevented.

This chronology is "heartbreaking," as the Magistrate Judge concluded. Joint Appx. at 69-70. More importantly, given the lawyer's deeply misleading statement to his client that he would not wait until the last day to file the petition, the specific facts of this case constitute an extraordinary circumstance sufficient to warrant equitable relief. *See Holland*, 130 S.Ct. at 2564 (referring to "fundamental canons of professional responsibility, which require attorneys . . . to implement clients' reasonable requests . . . ."); *Baldayaque*, 338 F.3d at 152.

On the record before us, and mindful of the Supreme Court's instruction that we "exercise judgment in light of prior precedent, but with awareness of the fact that specific circumstances, often hard to predict in advance, could warrant special treatment in an appropriate case," *Holland,* 130 S. Ct at 2563, we hold that in the specific circumstances presented here equitable tolling by one day was appropriate. Accordingly, we vacate the judgment of the District Court dismissing the Petition on the basis of the one-year statute of limitations, and we remand the cause for further proceedings consistent with this opinion.

## CONCLUSION

The judgment of the District Court is **VACATED**, and the cause is **REMANDED** for further proceedings consistent with this opinion.