David MARTINEZ, Petitioner,

v.

**SUPERINTENDENT OF EASTERN CORRECTIONAL FACILITY,** Respondent.

No. 11–cv–4330 (NG).

United States District Court, E.D. New York.

Signed April 15, 2014.

David Martinez, Beacon, NY, pro se.

Laurie Kathleen Gibbons, New York State Attorney Generals Office–Generic, New York State Attorney Generals Office, Mineola, NY, for Respondent.

## *ORDER*

GERSHON, District Judge:

By order dated October 6, 2011, the Honorable Sandra J. Feuerstein, district judge, directed petitioner to show cause why his application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254

should not be dismissed as time-barred, specifically requiring petitioner to "provide the date he filed his petition for a writ of error coram nobis in state court and the date he was sentenced, if different from the date that he entered a plea of guilty," and to "present any facts which would support equitable tolling of the period of limitations, if applicable."[1] October 6, 2011 Order [ECF No. 4] at 5, 2011 WL 4852271, at *2. For the reasons set forth below, the petition is dismissed.

## BACKGROUND

### I. Procedural History

On July 20, 2007, petitioner pleaded guilty in New York Supreme Court, Nassau County, to attempted murder in the second degree, two counts of robbery in the first degree, two counts of assault in the first degree, criminal use of a firearm in the first degree, criminal possession of a weapon in the second degree, and criminal possession of a weapon in the third degree.[2] He waived his right to appeal on all counts. On February 11, 2008, petitioner was sentenced to concurrent determinate

terms of imprisonment of twelve years followed by five years of post-release supervision for the first seven counts of the indictment, and a concurrent determinate term of imprisonment of seven years followed by three years of post-release supervision for the count of criminal possession of a weapon in the third degree. The court also imposed restitution in the amount of $33,811.47, various fees, and a final order of protection in favor of the victim.

Petitioner filed a writ of error coram nobis with the New York Supreme Court, Nassau County, on August 3, 2010.[3] On December 8, 2010, that court modified the restitution amount, but otherwise denied the writ. The Appellate Division, Second Department, denied petitioner leave to appeal the denial of the writ of error coram nobis on May 10, 2011, and the New York Court of Appeals dismissed his application for leave to appeal on August 1, 2011.

Mr. Martinez filed a *pro se* petition seeking a writ of habeas corpus in this court on August 30, 2011.[4] He seeks a

1. This case was reassigned to me on January 18, 2012, pursuant to Local Rule 50.4.

2. Petitioner does not provide his sentencing date, if different from the date on which he entered his guilty plea. Petition [ECF No. 1] ¶ 2; Petitioner's Affirmation [ECF No. 5–1] at 1. However, respondent submits sufficient evidence for the court to conclude that Mr. Martinez entered his plea of guilty on June 20, 2007 and was sentenced on February 11, 2008. June 20, 2007 Plea Minutes [ECF No. 6–5]; February 11, 2008 Sentencing Minutes [ECF No. 6–6]. Petitioner does not contest those dates in his reply.

3. In his petition, Mr. Martinez indicates that he both filed the writ of error coram nobis and learned the result of the filing on December 8, 2010. Petition [ECF No. 1] ¶ 15. Respondent submits evidence showing that petitioner actually filed the writ of error coram nobis on August 3, 2010 and that the court's decision was issued on December 8, 2010,

and petitioner does not thereafter dispute these dates. August 3, 2010 Affidavit of Service Accompanying Writ of Error Coram Nobis [ECF No. 6–1] at 9; December 8, 2010 Writ of Error Coram Nobis Decision [ECF No. 6–4] at 5.

4. Mr. Martinez's petition for a writ of habeas corpus was dated August 22, 2011 and was filed in the clerk's office of the United States District Court for the Eastern District of New York on September 8, 2011. An application to proceed *in forma pauperis*, dated August 30, 2011, was filed with his habeas petition. Respondent uses September 8, 2011 in its tolling calculations. Respondent's Memorandum of Law in Support of Motion to Dismiss [ECF No. 6] at 4. However, under the "prisoner mailbox rule," the petition is deemed filed as of the time Mr. Martinez gave it to prison officials to mail, which is presumed to be the date on which he signed it. *See Hardy v. Conway*, 162 Fed.Appx. 61, 62 (2d Cir. 2006) ("[I]n the absence of contrary evidence,

reduction of his sentence to ten years of imprisonment and reduction or elimination of his post-release supervision based on claims of ineffective assistance of counsel, the alleged illegality of post-release supervision, and the coercion of his plea. Respondent seeks to dismiss Mr. Martinez's petition based on untimeliness.

## II. Communications With Post–Conviction Counsel

On March 3, 2008, within a month of his sentencing, Mr. Martinez and his mother hired Anthony Denaro, Esq. to assist petitioner.[5]

Mr. Martinez states that Mr. Denaro sent "nothing" to him until March 4, 2009. September 27, 2010 Grievance Committee Complaint [ECF No. 5–1] at 11. Mr. Martinez submits no correspondence sent from him to Mr. Denaro's office during the prior one-year period. However, Mr. Denaro's January 18, 2011 letter to the Second Department Grievance Committee, Tenth Judicial District ("Grievance Committee") references a January 28, 2009 letter sent from his office to Mr. Martinez enclosing court documents as well as a March 3, 2009 letter sent by Mr. Martinez in response to a letter sent by Mr. Denaro's office on February 12, 2009, which requested that Mr. Martinez provide "a de-

tailed statement of the facts and circumstances" of his case.[6] January 18, 2011 Letter from Mr. Denaro to Grievance Committee [ECF No. 5–1] at 17.

Petitioner provides evidence that, on March 4, 2009—more than a year after Mr. Martinez retained Mr. Denaro—a lawyer from Mr. Denaro's law firm, Jack Evans, Esq., sent Mr. Martinez a letter seeking to gather information that would enable Mr. Evans to file a coram nobis petition. Seemingly unaware of the imminent federal habeas corpus filing deadline on March 12, 2009, Mr. Evans did not mention the possibility of filing a habeas corpus petition. Mr. Denaro's letter to the Grievance Committee indicates that his law firm received a response from Mr. Martinez on March 16, 2009.[7] On April 6, 2009, Mr. Evans sent Mr. Martinez a letter describing the possible results upon filing a coram nobis petition. While that letter makes clear that Mr. Evans had communicated with petitioner's mother since Mr. Evans sent the March 4, 2009 letter, there is no indication that he and petitioner had communicated other than as set forth above. On April 30, 2009, Mr. Evans informed Mr. Martinez that Mr. Evans was leaving Mr. Denaro's law firm, referencing Mr. Martinez's two "most recent letters."[8] On June 25, 2009, Mr.

district courts in this circuit have tended to assume that prisoners' papers were given to prison officials on the date of their signing.") (citing cases). Therefore, Mr. Martinez's petition is properly deemed filed as of August 30, 2011. *See Cromwell v. Keane,* 27 Fed.Appx. 13, 14 (2d Cir.2001) (concluding petition was filed as of the date on which petitioner signed his *in forma pauperis* application, which was later than the date on which his habeas petition was signed).

5. Mr. Denaro, Mr. Martinez, and his mother executed an Agreement to Provide Legal Services. March 3, 2008 Agreement to Provide Legal Services [ECF No. 5–1] at 4. The handwriting under "Legal Services to be Provid-

ed" is nearly illegible, but it appears that the parties agreed, *inter alia,* that Mr. Denaro would "appeal [Mr. Martinez's] conviction."

6. Petitioner does not provide the February 12, 2009 or March 3, 2009 letters.

7. Mr. Martinez does not provide the March 16, 2009 letter.

8. Petitioner does not enclose the two letters that Mr. Evans references. In Mr. Denaro's letter to the Grievance Committee, he also claims that his firm drafted an affidavit for Mr. Martinez and met with Mr. Martinez's mother in April 2009. January 18, 2011 Let-

Denaro sent petitioner a letter stating that he was "determining whether the appeal should be taken to the federal court"; he also referenced a June 18, 2009 letter that Mr. Martinez sent him.[9] On November 13, 2009, Mr. Denaro updated Mr. Martinez about "the status of your motion to withdraw your guilty plea and federal habeas corpus relief" and asked him to sign an enclosed affidavit. Mr. Denaro's letter mentions "the discussion I had with your mother and your letters to me."[10]

On September 27, 2010, Mr. Martinez complained to the Grievance Committee about Mr. Denaro's conduct. Mr. Martinez submitted additional letters to the Grievance Committee on December 21, 2010 and August 9, 2011. He also contacted The Lawyers' Fund for Client Protection.[11] On November 18, 2011, the Grievance Committee concluded that Mr. Denaro's "conduct constituted a breach of the Rules of Professional Conduct and directed that an ADMONITION be issued to the attorney for his failure to pursue your legal matter in a timely manner." November 18, 2011 Grievance Committee Letter [ECF No. 7] at 11.

## DISCUSSION

### I. One-Year Limitations Period

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") imposes a one-year statute of limitations for habeas corpus petitions, which runs from the date on which the latest of the following four events occurs:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D). Regarding subsection (A), the Supreme Court has explained that, where a state prisoner does not seek review all the way to the Supreme Court, "the judgment becomes final at the 'expiration of the time for seeking such review'—when the time for pursuing direct review in this Court, or in state court, expires."[12] *Gonzalez v. Thaler*, —— U.S. ——, 132 S.Ct. 641, 653–54, 181 L.Ed.2d 619 (2012) (quoting 28 U.S.C. § 2244(d)(1)(A)). Pursuant to N.Y. C.P.L. § 460.10(1)(a), where a New York petition-

---

ter from Mr. Denaro to Grievance Committee [ECF No. 5–1] at 17.

**9.** Petitioner does not enclose the June 18, 2009 letter.

**10.** Petitioner neither presents the letters that Mr. Denaro references nor indicates the subject of discussion between Mr. Denaro and Mr. Martinez's mother.

**11.** He received an October 7, 2010 response indicating that the organization could not assist him.

**12.** Petitioner makes his claim only under 28 U.S.C. § 2244(d)(1)(A). The court has considered subsections (B)-(D) and finds that they do not apply. Nor has petitioner asserted a claim of "actual innocence" that might excuse the petition's untimeliness. *See Rivas v. Fischer*, 687 F.3d 514, 518 (2d Cir.2012) (holding that "a credible and compelling showing of actual innocence ... warrants an equitable exception to AEDPA's limitation period, allowing the petitioner to have his otherwise time-barred claims heard by a federal court").

er does not seek appellate review, "his judgment bec[o]me[s] final thirty days after it [i]s entered." *Atkins v. Gonyea,* 2014 WL 199513, at *1 (S.D.N.Y. Jan. 17, 2014).

The one-year period of limitation began to run when Mr. Martinez's judgment of conviction became final, on March 12, 2008, which was thirty days after his sentencing. His petition therefore would have been time-barred as of March 12, 2009—more than two years before petitioner filed his August 30, 2011 petition—unless the limitation period was tolled by statutory or equitable considerations.

## II. Statutory Tolling

■ In calculating the one-year statute of limitations period, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted." 28 U.S.C. § 2244(d)(2). But, such motions, filed after expiration of the AEDPA limitations period, do not start the one-year limitation period anew. *See, e.g., Diaz v. Kelly,* 515 F.3d 149, 152 (2d Cir.2008) ("Because [petitioner's] one year statutory filing period [under the AEDPA] had already expired, this subsequent state court collateral attack does not toll the federal limitations period."), *cert. denied,* 555 U.S. 870, 129 S.Ct. 168, 172 L.Ed.2d 121 (2008); *Bethea v. Girdich,* 293 F.3d 577, 578 (2d Cir.2002) ("state-court applications for collateral relief do not 'restart' the AEDPA limitations period"); *Smith v. McGinnis,* 208 F.3d 13, 17 (2d Cir.2000) ("proper cal-

culation of Section 2244(d)(2)'s tolling provision excludes time during which properly filed state relief applications are pending but does not reset the date from which the one-year statute of limitations begins to run"), *cert. denied,* 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 63 (2000). Since Mr. Martinez filed the writ of error coram nobis on August 3, 2010—more than sixteen months after the expiration of the AEDPA filing deadline on March 12, 2009—he is not entitled to statutory tolling.[13]

## III. Equitable Tolling

■ The AEDPA limitations period is subject to equitable tolling in appropriate cases in which a petitioner shows "that some extraordinary circumstance stood in his way and prevented timely filing" and "that he has been pursuing his rights diligently." *Holland v. Florida,* 560 U.S. 631, 649, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010) (internal quotations omitted); *Doe v. Menefee,* 391 F.3d 147, 159 (2d Cir.2004) ("petitioner must establish that extraordinary circumstances prevented him from filing his petition on time, and that he acted with reasonable diligence throughout the period he seeks to toll") (internal quotations omitted).

### A. *Extraordinary Circumstances*

■ A client generally "must 'bear the risk of attorney error'" because "a lawyer is the agent of his client." *Rivas,* 687 F.3d at 538 (quoting *Holland,* 560 U.S. at 650, 130 S.Ct. 2549). "Therefore, 'a garden variety claim of excusable neglect,

---

**13.** To the extent that petitioner contends that the September 27, 2010 complaint he filed with the Grievance Committee entitled him to statutory tolling, he is mistaken. The complaint does not constitute the type of collateral relief required for statutory tolling, as the Grievance Committee's "function … [was] limited to a determination as to whether there

has been a violation of the rules and laws governing attorney conduct." October 19, 2010 Grievance Committee Letter [ECF No. 1–1] at 9. In any event, the March 12, 2009 filing deadline had expired more than eighteen months before he filed his Grievance Committee complaint.

such as a simple miscalculation that leads a lawyer to miss a filing deadline, does not warrant equitable tolling.'" *Rivas*, 687 F.3d at 538 (quoting *Holland*, 560 U.S. at 651–52, 130 S.Ct. 2549). For an attorney's conduct "to rise to the level necessary to constitute an 'extraordinary circumstance,' for purposes of tolling § 2254's limitation period, attorney negligence must be so egregious as to amount to an effective abandonment of the attorney-client relationship." *Rivas*, 687 F.3d at 538; *Baldayaque v. United States*, 338 F.3d 145, 152 (2d Cir.2003) ("at some point, an attorney's behavior may be so outrageous or so incompetent as to render it extraordinary"). The Supreme Court and courts in this circuit have found that attorney conduct amounts to abandonment where counsel "ignored or contravened [his client's] express instructions." *Rivas*, 687 F.3d at 539; *Holland*, 560 U.S. at 652, 130 S.Ct. 2549 (counsel ignored client's communications emphasizing the importance of timely filing); *Dillon v. Conway*, 642 F.3d 358, 363–64 (2d Cir.2011) (same); *Nickels v. Conway*, 480 Fed.Appx. 54, 56–57 (2d Cir. 2012) (counsel failed to file petition upon client's direction and "constantly" told client petition was nearly complete and that timeliness was unimportant).

■ Petitioner argues that the conduct of his post-conviction counsel, who "did nothing except make empty promises," constitutes "extraordinary circumstances" warranting equitable tolling. Petitioner's Affirmation [ECF No. 5–1] at 2. By Mr. Martinez's account, after he retained Mr. Denaro, Mr. Denaro's law firm did not contact Mr. Martinez again for a full year—eight days before the AEDPA filing deadline. Although not clear from the illegible Agreement to Provide Legal Services, the possibility of federal habeas relief seems to have been contemplated by the parties. In his response to the Griev-

ance Committee, Mr. Denaro claims that, during the intervening time, his law firm reviewed petitioner's court file on March 10, 2008; contacted Mr. Martinez's trial counsel on November 28, 2008 and January 28, 2009; sent Mr. Martinez a letter enclosing court documents on January 28, 2009; and sent Mr. Martinez a letter on February 12, 2009 requesting "a detailed statement of the facts and circumstances." January 18, 2011 Letter from Mr. Denaro to Grievance Committee [ECF No. 5–1] at 17. Mr. Denaro's letter to the Grievance Committee does not indicate whether or not he was aware of the March 12, 2009 habeas corpus filing deadline. While Mr. Denaro's narrative differs slightly from Mr. Martinez's, by his own account, Mr. Denaro did not contact Mr. Martinez until January 28, 2009, which was nearly a year after he was retained. Even under these facts, which were available to the Grievance Committee, Mr. Denaro's actions constitute "extraordinary circumstances."

Though Mr. Denaro may not have "ignored or contravened" Mr. Martinez's specific instructions to file a habeas petition like the attorney in *Dillon*, Mr. Denaro effectively abandoned Mr. Martinez when he, as the Grievance Committee concluded, "fail[ed] to pursue [petitioner's] legal matter in a timely manner." November 18, 2011 Grievance Committee Letter [ECF No. 7] at 11.

### B. *Reasonable Diligence*

■ Accepting that petitioner has established that "extraordinary circumstances" existed, he cannot show that he diligently pursued his petition during the time he seeks to toll. Where a petitioner's argument relies on "attorney incompetence," "the petitioner must still demonstrate that he himself made reasonably diligent attempts to ensure that his petition was filed on time." *Doe*, 391 F.3d at

175. "Particularly because petitioners often are fully capable of preparing and filing their habeas petitions *pro se,* and *pro se* status does not in itself constitute an extraordinary circumstance meriting tolling, it would be inequitable to require less diligence from petitioners who are able to hire attorneys than from those who are forced to proceed *pro se.*" *Id.* (internal citation omitted). "[T]he district court should ask: did the petitioner act as diligently as reasonably could have been expected *under the circumstances?*" *Baldayaque,* 338 F.3d at 153 (emphasis in original).

 Here, petitioner did not. "In the attorney incompetence context . . . the reasonable diligence inquiry focuses on the purpose for which the petitioner retained the lawyer, his ability to evaluate the lawyer's performance, his financial and logistical ability to consult other lawyers or obtain new representation, and his ability to comprehend legal materials and file the petition on his own." *Doe,* 391 F.3d at 175. The evidence shows that Mr. Martinez hired Mr. Denaro to handle post-conviction relief, including the filing of a possible appeal, writ of error coram nobis, and/or federal habeas corpus petition. There is no reason to believe that Mr. Martinez could not evaluate Mr. Denaro's performance, as he did in submissions to the Grievance Committee, and this court. Although petitioner could have contacted Mr. Denaro anytime between March 3, 2008 and the AEDPA filing deadline regarding his potential habeas petition, the record is devoid of evidence indicating that Mr. Martinez inquired about a potential federal habeas corpus petition within this time period. *See Romero–Padilla v. United States,* 2014 WL 774957, at *4 (S.D.N.Y. Feb. 27, 2014) (finding, in § 2255 context, that petitioner "had stopped communicating with his own attorney," which "inde-pendently dispose[d] of his claim to equitable tolling"); *compare Baldayaque,* 338 F.3d at 151 (quoting district court's conclusion that petitioner "did everything that could have been expected of him and . . . went to extraordinary ends to have a [petition timely] filed on his behalf") (internal quotation marks omitted). While petitioner contacted counsel and the Grievance Committee multiple times *after* the expiration of the AEDPA filing deadline, that evidence is not relevant to the court's equitable tolling analysis. Petitioner also could have hired a new attorney, or, as he eventually did, drafted the petition himself with the assistance of the prison's resources. In sum, Mr. Martinez's submission offers no indication that he acted with reasonable diligence to file his petition. He has thus failed to demonstrate that he is entitled to equitable tolling of the statute of limitations.

**CONCLUSION**

Mr. Martinez's petition for a writ of habeas corpus pursuant to 28 U.S.C, § 2254 is denied. 28 U.S.C. § 2244(d)(1). As Mr. Martinez has not made a "substantial showing of the denial of a constitutional right," a certificate of appealability shall not issue. 28 U.S.C. § 2253(c).

**SO ORDERED.**