IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 26, 2018

## ALEXANDER R. CARINO v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Cumberland County**
**No. 09-0016A       David Patterson, Judge**

_____

**No. E2018-00775-CCA-R3-PC**
_____

The Petitioner, Alexander R. Carino, pleaded guilty to two counts of second degree murder, and the trial court sentenced him to forty-three years of incarceration. The Petitioner did not appeal his convictions and did not file a timely post-conviction petition. The Petitioner filed a petition for habeas corpus relief, which the habeas corpus court summarily dismissed. This court affirmed. *Alexander R. Carino v. State*, M2017-00345-CCA-R3-CD, 2017 WL 3311196, at *1 (Tenn. Crim. App., at Nashville, Aug. 3, 2017), *perm. app. denied* (Tenn. Nov. 17, 2017). The Petitioner filed an untimely petition for post-conviction relief, which the post-conviction court summarily dismissed. On appeal, the Petitioner contends that the post-conviction court erred and should have waived the statute of limitations because his trial counsel did not give him his case file to prepare the petition and because he had been denied access to the prison legal library, thereby delaying the filing of his petition. After review, we affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and ROBERT L. HOLLOWAY, JR.., JJ., joined.

Alexander R. Carino, Hartsville, Tennessee, Pro Se.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Senior Counsel; Bryant C. Dunaway, District Attorney General; and Phillip Hatch, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I.  Facts**
**A. Procedural History**

This case arises from the Petitioner and two co-defendants' breaking and entering into the home of Keith Patton to commit robbery. Mr. Patton and his guest William Asher were both killed. One of the Petitioner's co-defendants took his case to trial, during which the State presented evidence against all the co-defendants. We briefly discuss the facts presented against the defendant in his co-defendant's case.

Tyler Rhinehart testified that two men armed with AK-47 assault rifles and wearing black masks entered Mr. Patton's home on November 7, 2008, while he and others were present in the home. The two men began shooting at the unarmed group, and both Mr. Patton and Mr. Asher were shot. Mr. Rhinehart saw a third man look into the house, and the shooters told him to exit and "watch out." Shortly thereafter, some of Mr. Patton's friends arrived, and the three shooters left in a black car with round stacked tail lights, similar to one of the co-defendant's friend's Kia vehicle. 911 was called, but Mr. Patton and Mr. Asher died as a result of their injuries.

Joshua Hutson, the third man involved in the robbery, testified as follows:

Hutson said that he and [the Petitioner] discussed the potential of committing a robbery and that he agreed to participate. Hutson recalled that, on November 7, 2008, he spent most of the day at home. In the evening, his girlfriend at the time, Anna Claire Daniels, drove him to meet [co-defendant Cofer] and [the Petitioner] at a Taco Bell in Oak Ridge, Tennessee. Hutson said [the Petitioner] drove the three men in a "dark colored four door Kia" to Cumberland County. . . .

Hutson testified that, on the way to Cumberland County, the men stopped at [co-defendant Cofer's] home for [co-defendant Cofer] to retrieve black clothing. [Co-defendant Cofer] also purchased gloves at a gas station for [himself] and Hutson. Hutson said that all of the men dressed similarly, although Hutson's mask had a camouflage pattern covering the bottom portion of the mask. Once the men arrived in Cumberland County, they drove down Highway 70 looking for the "right home." [The Petitioner] was not sure which home was Patton's, so he called Amanda Spence, who knew the location of Patton's home, but she did not answer her phone.

Eventually, Spence returned [the Petitioner's] call, and the men drove to Spence's home. Hutson said that he had only met Spence one time previously. Hutson recalled that [the Petitioner], [co-defendant Cofer], Spence, and a friend of Spence's were all present when they discussed the robbery. Spence provided the men with a diagram of the layout of the residence. Spence then went with the men to "scout[ ] the place out."

2

Hutson said they had guns in a bag in the trunk of the Kia. After returning to Spence's house, Hutson took the driver's seat and drove the men to Patton's home where he stopped in front of the neighbor's driveway. [Co-defendant Cofer] and [the Petitioner] got out of the Kia with guns and walked toward the residence, while Hutson drove down the street and then back past Patton's home, ultimately parking in the driveway.

Hutson testified that, before [the Petitioner] and [co-defendant Cofer] went into Patton's home, he and [the Petitioner] placed their cellular phones and keys in the glove compartment of the Kia. The State produced, and Hutson identified, both his and [the Petitioner's] cellular phones. Hutson recalled that, after he parked in Patton's driveway, he got out and walked around to the front of the car. [The Petitioner] instructed Hutson to turn off the headlights, and Hutson did so. Hutson said that [the Petitioner] was standing at the corner of the house closest to the door while [co-defendant Cofer] was on the other corner. [The Petitioner] entered the house first, carrying an assault rifle, and then [co-defendant Cofer] entered, carrying a handgun. Hutson said that he stood beside the driver's side door as the men entered the home. Almost immediately, Hutson heard "rapid gunshots," so he reached in the glove compartment, grabbed the cellular phones and keys, and ran to the front porch. When he looked in the residence he saw someone sitting on the couch "that stared directly back at [him]," a man lying on the floor, and [co-defendant Cofer] standing with the pistol drawn. [Co-defendant Cofer] told Hutson to "keep a lookout," so Hutson ran back to the driveway. Within a minute, another car pulled into Patton's driveway, and Hutson fled.

*State v. Cody Cofer*, E2011-00727-CCA-R3-CD, 2012 WL 3555310, at *4 (Tenn. Crim. App., at Knoxville, Aug. 20, 2012), *perm. app. denied* (Tenn. Dec. 10, 2012).

Amanda Spence, a co-defendant, testified that the Petitioner was her drug dealer and that she was present when he said that he wanted to rob someone. She also participated in relaying information to and from the Petitioner about robbing Patton. The Petitioner went to Ms. Spence's home in a black Kia with co-defendants Cofer and Hutson on November 7, 2008, and she gave them directions to Patton's home. Before leaving, the Petitioner brought a bag of guns into her home. The men left her home, returned to get the guns, and then co-defendant Cofer called her later. Co-defendant Cofer was panicked because things had not gone as planned. Ms. Spence left her residence to go find co-defendant Hutson and drove by the Pattons' home where she saw emergency responders and police arresting co-defendant Hutson. Law enforcement officers arrested Ms. Spence the following day.

3

Law enforcement officers found the two weapons involved in the shooting in the Clinch River. Based upon witness interviews, phone records, text messages, ballistics testing, and evidence found during the execution of search warrants, the three men were arrested.

A Cumberland County Grand Jury indicted the Petitioner and his co-defendants for two counts of first degree felony murder committed "during the attempted perpetration of an especially aggravated robbery" and one count of especially aggravated robbery. On July 19, 2010, the Petitioner pleaded guilty to two counts of second degree murder, and he received consecutive sentences of twenty-one years and six months' confinement at 100% service. The especially aggravated robbery charge was dismissed upon the Petitioner's pleading guilty to two counts of second degree murder. The Petitioner did not timely seek appellate or post-conviction relief.

## B. Habeas Corpus

The Petitioner filed a petition for a writ of habeas corpus, and the habeas court summarily dismissed the petition. In our opinion affirming the habeas court's judgment, we stated:

> The Petitioner filed the instant petition for habeas corpus relief, alleging that his convictions were void because the trial court lacked jurisdiction to enter judgments against him. He argued that the trial court did not have jurisdiction to enter judgments for second degree murder without the prosecution's obtaining an indictment from the grand jury for second degree murder. He also argued that the first degree felony murder charges alleged attempted especially aggravated robbery as a predicate felony, which is not enumerated in the felony murder statute, and that because the independent especially aggravated robbery charge was dismissed the court was deprived of jurisdiction to enter judgments relative to the homicides. The Petitioner also argued that he did not knowingly and voluntarily waive the trial court's jurisdiction.
>
> The habeas corpus court summarily denied relief after reviewing the petition and indictment. The court determined that the Petitioner's arguments were without merit and unsupported by the law. The court found that the Petitioner's allegations were "devoid of any support questioning the trial court's jurisdiction to act." The habeas corpus court determined that the trial court "clearly had jurisdiction" and that the judgments were not void.

4

*Carino*, 2017 WL 3311196, at *1. This court affirmed the habeas corpus court's summary dismissal of the petition. *Id.*

### C. Post-Conviction Facts

The Petitioner filed this untimely petition for post-conviction relief on February 6, 2018. In it, he contended that the one-year statute of limitations should not apply to him because his trial counsel ("Counsel") had not given him his case file until a month before his filing and because he had been kept in administrative segregation with no access to the law library for much of his incarceration.

The post-conviction court summarily dismissed the petition. In it, the court found:

1. On July 16, 2010, the Petitioner entered pleas to two (2) second degree murder counts and received an agreed, aggregate sentence of forty-three (43) years.
2. The judgments memorializing these convictions were signed by the Court on July 16, 2010 and filed with the Clerk on July 19, 2010.
3. The "Petition for Relief from Conviction or Sentence" was signed by the incarcerated Petitioner on February 6, 2018. The Petitioner's affidavit of indigency was notarized on March 9, 2018. The "Petition" was filed by the Clerk on March 22, 2018.
4. No appeal was taken challenging the convictions in the trial court, the Court of Criminal Appeals, nor the Supreme Court.
5. Two (2) habeas corpus petitions have been filed by the Petitioner and may (or may not) presently be pending; one in the Trousdale County Circuit Court filed on January 13, 2017, the other in the U.S. District Court Middle District Tennessee filed on January 11, 2018.
   Thus, the Court further finds that the "Petition" is filed beyond one (1) year of the date the judgments became final.
   Following a thorough review of the "Petition" and the record, with consideration of T.C.A. § 40-30-102(b), the Court concludes that the claim[s] in the "Petition" do not give the Court jurisdiction to consider the "Petition" due to its late filing.

It is from this judgment that the Petitioner now appeals.

### II. Analysis

On appeal, the Petitioner contends that the post-conviction court should have

5

allowed a late filing of his petition. In furtherance of this contention, he asserts that his delay was caused by Counsel's "refus[ing]" to appeal his case and failing to give him his case file. The Petitioner said that he wrote to his attorney repeatedly, filed a bar complaint, and still Counsel did not mail him the case file until January 18, 2018. He asks that the statute of limitations for his post-conviction petition be tolled so that he may pursue his petition. The State counters that the post-conviction court correctly found that the Petitioner had not proven that he was pursuing his rights diligently during the seven-year delay. We agree with the State.

Under the Post-Conviction Procedure Act, a claim for post-conviction relief must be filed "within one (1) year of the date of the final action of the highest state appellate court to which an appeal is taken or, if no appeal is taken, within one (1) year of the date on which the judgment became final, or consideration of the petition shall be barred." T.C.A. § 40-30-102(a) (2014). The statute goes on to state:

> The statute of limitations shall not be tolled for any reason, including any tolling or saving provision otherwise available at law or equity. Time is of the essence of the right to file a petition for post-conviction relief or motion to reopen established by this chapter, and the one-year limitations period is an element of the right to file the action and is a condition upon its exercise. Except as specifically provided in subsections (b) and (c), the right to file a petition for post-conviction relief or a motion to reopen under this chapter shall be extinguished upon the expiration of the limitations period.

Pursuant to subsection (b) of that statute, "No court shall have jurisdiction to consider a petition filed after the expiration of the limitations period unless:"

> (1) The claim in the petition is based upon a final ruling of an appellate court establishing a constitutional right that was not recognized as existing at the time of trial, if retrospective application of that right is required. The petition must be filed within one (1) year of the ruling of the highest state appellate court or the United States supreme court establishing a constitutional right that was not recognized as existing at the time of trial;

> (2) The claim in the petition is based upon new scientific evidence establishing that the petitioner is actually innocent of the offense or offenses for which the petitioner was convicted; or

> (3) The claim asserted in the petition seeks relief from a sentence that was enhanced because of a previous conviction and the conviction in the case in which the claim is asserted was not a guilty plea with an agreed

sentence, and the previous conviction has subsequently been held to be invalid, in which case the petition must be filed within one (1) year of the finality of the ruling holding the previous conviction to be invalid.

T.C.A. 40-30-102(b) (2014)

The post-conviction statute contains a specific anti-tolling provision, and none of the three narrow exceptions under which an untimely petition may be considered is applicable in this case.

While the statutory exceptions are not met, due process can require the tolling of the statute of limitations in some circumstances. *See Whitehead v. State*, 402 S.W.3d 615, 622-23 (Tenn. 2013). In *Whitehead* our supreme court identified three circumstances under which due process requires tolling of the post-conviction statute of limitations: (1) when a claim for relief arises after the statute of limitations has expired; (2) when a petitioner is prevented by his or her mental incompetence from complying with the statute's deadline; and (3) when attorney misconduct necessitates the tolling of the statute.

The *Whitehead* court went on to state:

Henceforth, when a post-conviction petitioner argues that due process requires tolling the Post-Conviction Procedure Act's statute of limitations based on the conduct of his or her lawyer, the two-prong inquiry of Holland and Maples should guide the analysis. A petitioner is entitled to due process tolling upon a showing (1) that he or she has been pursuing his or her rights diligently, and (2) that some extraordinary circumstance stood in his or her way and prevented timely filing. *Holland v. Florida*, 130 S. Ct. at 2562. Specifically, the second prong is met when the prisoner's attorney of record abandons the prisoner or acts in a way directly adverse to the prisoner's interests, such as by actively lying or otherwise misleading the prisoner to believe things about his or her case that are not true. *See Maples v. Thomas*, 132 S. Ct. at 923; *Holland v. Florida*, 130 S. Ct. at 2564-65; *Dillon v. Conway*, 642 F.3d 358, 363-64 (2d Cir.2011); *Downs v. McNeil*, 520 F.3d at 1320-21 (discussing these two "well-recognized exceptions" to the "your lawyer, your fault" rule).

In terms of diligence, courts have recognized that due diligence "does not require a prisoner to undertake repeated exercises in futility or to exhaust every imaginable option, but rather to make reasonable efforts . . . . Moreover, the due diligence inquiry is an individualized one that must take

7

into account the conditions of confinement and the reality of the prison system." *Downs v. McNeil*, 520 F.3d at 1323 (quoting *Aron v. United States*, 291 F.3d 708, 712 (11th Cir.2002)).

In the case presently before us, there is some evidence that the Petitioner wrote to Counsel asking for his case file. The Petitioner's case file is not a condition precedent to his filing of his petition for post-conviction relief. That being said, the Petitioner's statute of limitations expired in August of 2011. The Petitioner's infrequent letters to Counsel regarding his case file do not show that he was pursuing his rights diligently for the seven years between the time his judgment became final and when he filed his petition for post-conviction relief. We conclude that the post-conviction court did not err when it determined that the statute of limitations should not be tolled.

As further support for our holding, we note that our supreme court has stated that:

> As one court explains, "any resort to [equitable tolling] must be reserved for those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000). The Alabama Supreme Court has also noted that "the threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule." *Ex parte Ward*, 46 So.3d 888, 897 (Ala. 2007) (quoting *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000)). This is especially true in Tennessee, where our General Assembly has expressed its clear intention that the post-conviction filing deadline be construed as strictly as possible. *See also Sanchez v. State*, 816 N.W.2d 550, 561 n. 10 (Minn. 2012) (collecting cases from states that recognize equitable tolling in post-conviction actions and concluding that "[w]e have not found any state that applies a test less stringent than the federal *Holland* test in the context of post-conviction relief").

*Whitehead v. State*, 402 S.W.3d 615, 632 (Tenn. 2013).

This case, wherein the Petitioner pleaded guilty and in subsequent filings maintained his guilt but asked for a lesser sentence, is not one where due process requires the tolling of the statute of limitations. We, therefore, conclude that the post-conviction court properly dismissed the petition as time-barred.

## III. Conclusion

8

In accordance with the foregoing reasoning and authorities, we affirm the post-conviction court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE