**Nicco PLOWDEN, Petitioner,**

v.

**Donald ROMINE, Warden, Respondent.**

No. 99–CV–3752 (JG).

United States District Court,
E.D. New York.

Dec. 29, 1999.

Nicco Plowden, Lewisburg, PA, Petitioner, pro se.

Charles J. Hynes, Dist. Atty., Brooklyn, NY by Roseann B. MacKechnie and Amy Appelbaum, for Respondent.

## MEMORANDUM AND ORDER

GLEESON, District Judge.

Nicco Plowden, who was convicted of murder in the second degree in 1995, seeks a writ of habeas corpus, alleging ineffective assistance of trial and appellate counsel. Respondent has moved to dismiss the petition as untimely. For the reasons discussed below, the motion to dismiss is granted.

## BACKGROUND

On January 6, 1990, Kyle Hubbard was standing in front of a building on McKeever Place in Brooklyn, telling two friends about an argument he had had with Nicco Plowden earlier in the day. Just after this conversation, Plowden exited the building; he and Hubbard spoke; and Plowden then shot and killed Hubbard.

At Plowden's trial, his attorney advised the court that she believed Plowden's best strategy was to put on the defense of justification. (T. 333.[1]) She explained to Plowden that he would have to testify in

---

1. "T." refers to the transcript of Plowden's trial, which took place from March 22 to 30, 1995, in the New York Supreme Court, Kings County.

order to have the court charge the jury on justification and on the alternative count of manslaughter in the first degree. (*Id.* at 333–34.) Despite defense counsel's recommendation (endorsed by members of Plowden's family) that Plowden take the stand, counsel advised the court that Plowden had chosen not to testify. (*Id.* at 334.) The court told Plowden that defense counsel's advice to him about the justification and manslaughter charges' being unavailable unless he testified was correct. (*Id.* at 334.) Plowden told the court that he understood this but nonetheless did not wish to testify. (*Id.* at 334.)

Plowden was subsequently convicted of Murder in the Second Degree, *see* N.Y. Penal L. § 120.25[1], and, on April 10, 1995, was sentenced to a term of imprisonment of twenty-five years to life.

On direct appeal, Plowden argued that he should have a new trial because of prejudicial comments made by the prosecutor during summation. On February 10, 1997, the Appellate Division, Second Department concluded that Plowden's claim was "largely unpreserved." *People v. Plowden,* 236 A.D.2d 489, 654 N.Y.S.2d 610, 610 (2d Dep't 1997). The court also went on to conclude that the remarks about which Plowden complained were either "fair comments on the evidence" or "responsive to arguments presented in the defense counsel's summation." *Id.*

On February 13, 1997, Plowden, through counsel, sought leave to appeal to the New York Court of Appeals. Leave to appeal was denied on May 16, 1997. *See People v. Plowden,* 89 N.Y.2d 1098, 660 N.Y.S.2d 392, 682 N.E.2d 993 (1997). (As discussed below, Plowden avers that he did not find out about the denial until August 1, 1998.)

Plowden did not file a petition for a writ of certiorari in the United States Supreme Court.

On September 29, 1998, Plowden filed a *pro se* motion to vacate his conviction. *See* N.Y.Crim. Pr. L. § 440.10. He alleged that his trial counsel was constitutionally ineffective for waiving his right to testify and for not locating and calling as a witness Anthony Johnson, who would have testified that Hubbard, the murder victim, was a known "bully" and that Plowden had shot Hubbard when trying to free himself of a "choke-hold" Hubbard had on him. Plowden also alleged that his appellate counsel was ineffective for not arguing that trial counsel was ineffective in failing to ask for a jury charge on manslaughter in the first degree.

On March 9, 1999, the Supreme Court, County of Kings denied Plowden's § 440 motion. The court pointed to Plowden's on-the-record waiver of his right to testify (despite counsel's advice to the contrary) and an affidavit from trial counsel stating that she had hired a private investigator who had been unable to locate Johnson prior to trial. The court said it could not consider Plowden's claim of ineffective assistance of appellate counsel, which instead had to be raised in a petition for a writ of error coram nobis before the appellate court that had heard his case.

On March 15, 1999, Plowden filed an application for a writ of error coram nobis in the Appellate Division, Second Department. That court denied the application on June 14, 1999. *See People v. Plowden,* 262 A.D.2d 504, 691 N.Y.S.2d 783 (2d Dep't 1999).

Plowden filed his habeas petition on June 24, 1999, raising the same ineffective assistance claims he brought in his § 440 and coram nobis proceedings in state court.

Respondent subsequently moved to dismiss Plowden's petition as untimely under the one-year statute of limitations period of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. 104–132, 110 Stat. 1214 (1996), relevant portion codified at 28 U.S.C. § 2244(d)(1).

## DISCUSSION

AEDPA established a one-year limitation period for state prisoners seeking fed-

eral habeas relief. *See* 28 U.S.C. § 2244(d)(1). The one-year period begins on the latest of one of four dates:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevent from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.*

Here, Plowden does not argue (nor could he) that any of the triggering dates other than (A) are applicable in this case.

The New York Court of Appeals denied Plowden leave to appeal the Appellate Division's adverse decision on May 16, 1997. He therefore had until August 14, 1997, to file a petition for a writ of certiorari in the United States Supreme Court. *See* Sup. Ct. R. 13(1); 30(1). Since he did not do so, the clock on his habeas petition began running on that date, which represented the expiration of his time for seeking direct review of his conviction. *See Ross v. Artuz*, 150 F.3d 97, 98 (2d Cir.1998); Fed R. Civ. P. 6(a). Given the one-year statute period under AEDPA, Plowden had until August 14, 1998 to file his habeas petition. *See Ross*, 150 F.3d at 103 ("When a statute of limitations is measured in years, the last day for instituting the action is the anniversary date of the start of the limitations period.").

Despite this deadline, Plowden did not file his habeas petition until June 24, 1999.

(The petition, while certainly late, is not as late as a simple comparison of dates suggest. The time when his § 440 petition was pending (from September 29, 1998, to March 9, 1999) and the time when his coram nobis petition was pending (from March 15, 1999, to June 14, 1999) do not count for purposes of the AEDPA statute of limitation. *See* 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."). Plowden's petition was therefore approximately eight weeks late.)

Plowden acknowledges that his petition was not timely filed, but argues that the one-year statute was tolled during the period that he claims he was unaware of the New York Court of Appeals's May 16, 1997, denial of his application for leave to appeal. Specifically, he asserts that he did not receive notice (either from the Court of Appeals or from his appellate counsel) that his leave to appeal had been denied until after he wrote to the Court on July 21, 1998, to inquire about the status of his case. When he received the Court's return letter on approximately August 1, 1998, he discovered that the direct review of his conviction was complete. If the statute were tolled until the August 1, 1998, date, as Plowden contends it should be, his petition is timely.

■ The Second Circuit has not had occasion to address the question whether the one-year deadline in AEDPA is an absolute bar to federal court jurisdiction or rather a statute of limitations subject to equitable tolling. The vast majority of courts to decide this question, however, have held that the AEDPA deadline should be interpreted as a statute of limitations and that the equitable concept of tolling is therefore applicable. *See Torres v. Miller*, No. 99–CV–0580(MBM), 1999 WL 714349, at *5 (S.D.N.Y. Aug. 27, 1999) (collecting cases); *see also Vasquez v. Greiner*, 68

F.Supp.2d 307, 308 (S.D.N.Y.1999) (noting "growing consensus" in support of equitable tolling of the AEDPA deadline). I agree with those courts and conclude that some circumstances will equitably toll the AEDPA one-year period.

■ Equitable tolling, which allows a plaintiff to initiate an action beyond a statute of limitations deadline, is typically available only when the party was "'prevented in some extraordinary way from exercising his rights.'" *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir.1996) (quoting *Miller v. International Tel. & Tel. Corp.*, 755 F.2d 20, 24 (2d Cir.1985)). The Supreme Court has cautioned that this equitable doctrine be used "only sparingly" and not in cases involving "garden variety claim[s] of excusable neglect." *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990). The Court has approved its use when the plaintiff filed a defective pleading in the right court or a proper pleading in the wrong court. *See id.* at 96 & n. 3, 111 S.Ct. 453 (citing *Burnett v. New York Central R. Co.*, 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965); *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974)). The Court has also endorsed equitable tolling when the plaintiff was misled by his adversary into allowing the statutory period to expire. *See id.* at 96 & n. 4, 111 S.Ct. 453 (citing *Glus v. Brooklyn Eastern Dist. Terminal*, 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959)).

■ Equitable tolling will generally not be available, however, "where the claimant failed to exercise due diligence in preserving his legal rights." *Id.* The same is true when the lack of due diligence is attributable to the claimant's attorney. *See South v. Saab Cars USA*, 28 F.3d 9, 12 (2d Cir.1994); *see also Irwin*, 498 U.S. at 92, 111 S.Ct. 453 ("Under our system of representative litigation, each party is deemed

bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney.)" (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962) (internal quotation marks omitted)).

Several district courts in this circuit have addressed cases such as this one. In *Baskin v. United States*, 998 F.Supp. 188 (D.Conn.1998), the petitioner's request for certiorari review of his conviction was denied on November 27, 1995. *See id.* at 189. However, he did not file his petition pursuant to 28 U.S.C. § 2255[2] until August 25, 1997. *See id.* The petitioner attributed his tardiness to the fact that his attorney did not notify him of the Supreme Court's denial of his petition until December 1996 (13 months late). Noting that the respondent did not offer any evidence to refute petitioner's explanation, the court concluded that "[i]t would be grossly inequitable to bar petitioner's ineffective assistance of counsel claim on the basis that counsel's error permitted the statute of limitations to run." *Id.* at 190. The court therefore agreed to equitably toll the statute period.

In *Vasquez*, 68 F.Supp.2d 307, the New York Court of Appeals had affirmed the petitioner's conviction on July 2, 1996. *See id.* at 308. Since he did not file a petition for a writ of certiorari, his conviction became final on September 30, 1996, and his time for filing a habeas petition expired a year later. *See id.* Yet, he did not file his petition until May 1, 1998, seven months late. *See id.* The petitioner argued for equitable tolling of the deadline because he claimed that his attorney had failed to notify him of the Court of Appeals's action and that he had not found out about it until February 1998 in response to a letter he personally wrote to the Court. *See id.*

---

**2.** Although Baskin was a federal prisoner and therefore brought his petition pursuant to § 2255, courts analyze the timeliness provisions of § 2255 and § 2254 (which Plowden utilizes) interchangeably. *See Baskin,* 998 F.Supp. at 189.

The habeas court concluded that, if true, petitioner's account would support equitable tolling. *See id.* at 310 (citing *Baskin,* 998 F.Supp. at 188–89). The court therefore scheduled an evidentiary hearing to consider whether petitioner's appellate counsel had really failed to notify him of the Court of Appeals's decision and whether the petitioner could have discovered the decision earlier on his own through "the exercise of reasonable diligence" by, for example, consulting available case reporters in the prison library. *See id.* at 310–11. *But cf. Mandarino v. United States,* No. 98–CV–490(LBS), 1998 WL 729703, at *2 (S.D.N.Y. Oct. 16, 1998) (granting respondent's motion to dismiss for untimeliness, without evidentiary hearing, in part because petitioner should have discovered that petition for certiorari had been denied by consulting case reporters).

■ Notwithstanding *Baskin* and *Vasquez,* I conclude that Plowden's allegations regarding his lack of notice of the Court of Appeals's decision, even if true, do not establish his entitlement to equitable tolling. My conclusion rests on Plowden's lack of reasonable diligence during and after the statutory period. *See Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 151, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984) ("One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence."); *Johnson v. Nyack Hosp.,* 86 F.3d 8, 12 (2d Cir.1996) ("Equitable tolling requires a party to pass with reasonable diligence through the period it seeks to have tolled.").

First, it was not reasonable for Plowden to allow more than seventeen months to elapse from February 13, 1997, the date on which he sought leave to appeal to the Court of Appeals, and July 21, 1998, the date on which he wrote to inquire as to the status of his leave request. Plowden does not allege that there was any impediment to his inquiring during that time. *See Miles v. Prunty,* 187 F.3d 1104, 1107 (9th Cir.1999) (equitable tolling only permitted "if extraordinary circumstances *beyond a*

*prisoner's control* make it impossible to file a petition on time." (emphasis added)); *see also Johnson,* 86 F.3d at 12 (equitable tolling appropriate when claimant "has been *prevented* in some extraordinary way from exercising his rights" (internal quotation marks omitted, emphasis added)). In fact, Plowden's own later experience (writing a letter to the Court of Appeals in July 1998 and receiving a quick response) demonstrates the ease with which he could have stayed informed about his case. *Cf. Walker v. Jastremski,* 159 F.3d 117, 119 (2d Cir.1998) (*per curiam*) ("[T]here is no indication that Walker could not, at an earlier date, have found out about the wrongs he currently alleges. On the contrary, there is every reason to think that, had he requested his record earlier, he would earlier have learned what he now claims was in it.").

Second, although Plowden claims that his appellate attorney failed to notify him of the Court of Appeals's decision, he does not allege that he ever contacted his attorney to check on the status of his case during this seventeen-month period. *Compare Smith v. Roe,* No. CV 98–2746–JGD SH, 1998 WL 657667, at *3 (C.D.Cal. June 8, 1998) ("[P]etitioner does not assert that he made any inquiry to either his appellate attorney or directly to the California Supreme Court at any time during 1996 or 1997 regarding the status of his Petition for Review."), *with Seitzinger v. Reading Hosp. & Med. Ctr.,* 165 F.3d 236, 237–38 (3d Cir.1999) ("[W]here ... a diligent client persistently questioned the lawyer as to whether he had filed the complaint in time, and he affirmatively misrepresented to her that he had, we think there is a sufficient claim of attorney abandonment to bring the case within the narrow line of cases in which lawyer misconduct justifies equitable tolling.").

Third, the limitations period had not run at the time Plowden claims he found out about the Court of Appeals's decision; he still had a window (albeit a brief one of two weeks) in which to file his habeas petition

or file for state collateral review, thus triggering AEDPA's statutory tolling provision, *see* 28 U.S.C. § 2244(d)(2) (requiring tolling during pendency of "properly filed application for State post-conviction or other collateral review"). *See Vasquez,* 68 F.Supp.2d at 310 ("While respondent points to a few cases in which equitable tolling was denied, most of those cases involved notification delays that did not extend beyond the statute of limitations cut-off date, so that the petitioners could still have timely filed their petitions."). Instead, Plowden waited nearly two months before filing his § 440 petition.

There is no limiting principle to Plowden's argument that simple ignorance—absent any showing of diligence on his part or allegations of impediments to his staying informed about his case—should provide a basis for equitable tolling; "[t]o hold that the statute of limitations should be extended in this case would allow the statute to be extended indefinitely." *Balagula v. United States,* 73 F.Supp.2d 287, 290 (E.D.N.Y. 1999). Such an outcome would defeat the court's duty to "take seriously Congress's desire to accelerate the federal habeas process." *Torres,* 1999 WL 714349, at *6 (quoting *Calderon v. United States Dist. Court,* 128 F.3d 1283, 1289 (9th Cir.1997)).

In sum, this case presents "at best a garden variety claim of excusable neglect," *Irwin,* 498 U.S. at 96, 111 S.Ct. 453, not an extraordinary set of circumstances that would justify a court to use equitable principles to set aside a Congressionally-prescribed statute of limitations.

## CONCLUSION

For the reasons set forth above, the petition for a writ of habeas corpus is dismissed as untimely. In addition, I refuse to issue a certificate of appealability, because petitioner has not presented a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).