**Jorge RIOS, Petitioner–Appellant,**

v.

**William MAZZUCA, Defendant–
Appellee.**

Docket No. 03–2150.

United States Court of Appeals,
Second Circuit.

Oct. 22, 2003.

Dennis B. Feld, Mental Hygiene Legal
Service (Sidney Hirschfeld and Christine
E. Morton, on the brief), Second Judicial
Department, Mineola, NY, for Appellant.

Leonard Joblove, Assistant District At-
torney (Charles J. Hynes, District Attor-
ney Kings County, on the brief, Ann Bord-
ley and Joyce Slevin, Assistant District
Attorneys, of counsel), Brooklyn, NY, for
Appellee.

PRESENT: NEWMAN, SOTOMAYOR,
and WESLEY, Circuit Judges.

*SUMMARY ORDER*

Petitioner-appellant Jorge Rios ("Rios")
appeals from the judgment of the United
States District Court for the Eastern Dis-
trict of New York (Bloom, *M.J.*), denying
his petition for a writ of habeas corpus, *see*
28 U.S.C. § 2254, as untimely after refus-
ing to equitably toll the statute of limita-
tions prescribed by the Antiterrorism and
Effective Death Penalty Act of 1996
("AEDPA"), 28 U.S.C. § 2244, et seq.
Rios argues that he was incapable of ap-
preciating the need to file in a timely
manner, or acting with the requisite dili-
gence throughout the period he seeks to
toll, because of his mental illness. We
agree with the district court that Rios
failed to carry his burden of proof and
affirm.

The AEDPA generally requires that a petitioner file an application for a writ of habeas corpus within one year of the date upon which his or her state criminal judgment became final. *See* 28 U.S.C. § 2244(d)(1). Because Rios was convicted prior to the AEDPA's enactment, he was required to file his habeas petition within one year of the AEDPA's effective date, or by April 24, 1997. *See Ross v. Artuz,* 150 F.3d 97, 102–03 (2d Cir.1998). Rios, however, did not file until June 29, 2001, and therefore concedes that his petition is untimely unless the deadline is equitably tolled.

Equitable tolling of the limitation period under the AEDPA is warranted "only in the rare and exceptional circumstance[ ]." *Smith v. McGinnis,* 208 F.3d 13, 17 (2d Cir.2000) (per curiam) (quotation marks and citation omitted). A petitioner carries the burden of proving that equitable tolling is justified, and thus

> must show that extraordinary circumstances prevented him from filing his petition on time, and he must have acted with reasonable diligence throughout the period he seeks to toll. To show that extraordinary circumstances prevented him from filing his petition on time, petitioner must demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances.

*Hizbullahankhamon v. Walker,* 255 F.3d 65, 75 (2d Cir.2001) (internal citations and quotation marks omitted).

Rios argues his mental illness rendered him unable to appreciate the necessity of filing a habeas petition within the prescribed time limit. Although one circuit has held that mental illness may qualify as an "extraordinary circumstance" sufficient to equitably toll the limitation period under the AEDPA, *see Calderon v. United States District Court,* 163 F.3d 530, 541 (9th Cir.1998), *abrogated on other grounds by Woodford v. Garceau,* 538 U.S. 202, 123 S.Ct. 1398, 1401, 155 L.Ed.2d 363 (2003), we have not yet had occasion to address the question. We, however, have recognized mental illness as a ground for equitable tolling in other contexts. *See Brown v. Parkchester South Condos.,* 287 F.3d 58 (2d Cir.2002) (Title VII); *Boos v. Runyon,* 201 F.3d 178 (2d Cir.2000) (Rehabilitation Act); *Canales v. Sullivan,* 936 F.2d 755 (2d Cir.1991) (claim for Supplemental Security Income). For the sake of this appeal, we need only assume that a petitioner seeking habeas relief can in some rare and exceptional circumstances rely on proof of mental illness to justify equitable tolling of the AEDPA's limitation period.

Although there is some disagreement among the circuits as to the appropriate standard of review to be applied in an appeal from a district court's refusal to toll under the AEDPA, *see Rouse v. Lee,* 339 F.3d 238, 247 (4th Cir.2003) (stating *de novo* review applies when equitable tolling refused as a matter of law, but abuse of discretion applies in all other circumstances); *Delaney v. Matesanz,* 264 F.3d 7, 13 (1st Cir.2001) (applying abuse of discretion); *Woodward v. Williams,* 263 F.3d 1135, 1142 (10th Cir.2001) (same); *Dunlap v. United States,* 250 F.3d 1001, 1007–08 n. 2 (6th Cir.2001) (stating *de novo* review applies where tolling denied as a matter of law); *Miles v. Prunty,* 187 F.3d 1104, 1105 (9th Cir.1999) (same); *Fisher v. Johnson,* 174 F.3d 710, 713 & n. 9 (5th Cir.1999) (same); *Smith–Haynie v. Dist. of Columbia,* 155 F.3d 575, 578 n. 4 (D.C.Cir.1998) (applying *de novo* review), we need not resolve that question, as our resolution of this appeal is the same under either standard.

In general, equitable tolling is appropriate "where a plaintiff's medical condition or mental impairment prevented [him] from proceeding in a timely fashion." *Zerilli–Edelglass v. N.Y. City Transit Auth.,* 333 F.3d 74, 80 (2d Cir.2003) (citing *Brown,* 287 F.3d at 60 and *Canales,* 936 F.2d at 758). We have said that "whether a person is sufficiently mentally disabled to justify tolling of a statute of limitation period is, under the law of this Circuit, highly case-specific." *Boos,* 201 F.3d at 184; *see also Brown,* 287 F.3d at 59. At a minimum, however, a petitioner must provide "a particularized description of how [his] condition adversely affected [his] capacity to function generally or in relationship to the pursuit of [his] rights[.]" *Boos,* 201 F.3d at 185.

There is no question in the instant case that Rios suffers from a chronic and sometimes debilitating mental illness. Medical records from the time he was arrested on murder charges on December 9, 1988, through the time he pled guilty to manslaughter on June 28, 1994, document that Rios's illness—variably described or diagnosed as schizophrenia, schizo-affective disorder, and antisocial personality disorder—often renders him withdrawn, aloof, paranoid, and preoccupied. At its worst, Rios's condition caused him to hear voices, attempt suicide, and periodically rendered him catatonic. Rios claims his history of psychiatric problems goes back even farther than his records substantiate, alleging that he was discharged from the Cuban army in 1966 into a psychiatric hospital and that he saw psychiatrists on an outpatient basis both in Cuba and in the United States after immigrating in 1980.

Although multiple psychiatrists certified that Rios was unfit to stand trial on at least three separate occasions, Rios was at other times, with the aid of medication, sufficiently able to relate to his surroundings, such that other psychiatrists twice found him fit to stand trial. Indeed, in Spring 1994, Rios's records show that he experienced an episode of relative mental clarity, was certified as fit to stand trial, and shortly thereafter pled guilty. Although Rios asserts in the instant habeas petition that he lacked the mental capacity to knowingly enter his plea, his own defense lawyer represented to the state court at the plea hearing that "at this point he is the most lucid that I have ever had the opportunity to deal with him. He seems to understand everything." (Tr. Ex. A, at 38).

Rios has produced no documentation showing that during the period of time from his conviction until his deadline for filing a timely habeas petition on April 24, 1997, he was so incapable of rational thought that he could not appreciate his situation, or lacked the wherewithal to ascertain that he must take legal steps. Nor does he have documentation that his mental illness kept him from acting with diligence throughout the many years that need be tolled for his petition to be timely. Rios, furthermore, does not argue that his condition abated or even improved prior to his filing a habeas petition in June 2001, and the record does not indicate other than that he filed his petition as soon as he realized that this was the appropriate legal avenue.

Although Rios's medical records show a decline in his condition after his sentencing in 1994, they also then show slight improvement. In November 1994, Rios was transferred into the general prison population and shortly thereafter documentation of his condition ends. Rios has produced two prison medical staff notations made subsequent to his transfer, one from 1996 and the other from 1997, and neither indicates significant, let alone insurmountable, problems in Rios's mental status. Rios claims that the lack of records from this

period is due to a failure on the part of prison authorities to provide him with much-needed psychiatric treatment and monitoring. He argues that rather than demonstrating that his condition was stable, this lack of evidence shows that he was receiving no treatment. Without treatment, he argues, his condition most likely worsened to such an extent that he could not have appreciated the need to file a habeas petition.

Rios's conduct, however, indicates that he was, to some extent, capable of investigating and pursuing legal avenues. Besides defending himself in INS removal proceedings in 1998, Rios filed a complaint against his state trial court judge with the Commission on Judicial Conduct, wrote numerous requests for transcripts of his sentencing hearing, filed an Article 78 proceeding in state court against the New York State Parole Board, filed a number of Freedom of Information Law and Act requests, sought to have his sentence set aside, and twice requested a statutory discharge only available to persons detained pursuant to a civil commitment or retention order. Most were found to be without merit and dismissed.

Rios argues in this appeal that his many nonsensical submissions are further evidence of his inability to timely file his habeas petition. He also argues that his assertion of his factual innocence in many of his submissions and in his INS removal proceeding shows he would have filed a habeas petition had he been capable of so doing. It is, however, equally possible on this record that Rios would have filed his habeas petition had he known that he needed to do so. *Cf. Hodge v. Greiner,* 269 F.3d 104, 107 (2d Cir.2001) (finding no basis for equitable tolling where petitioner sought discovery, on which he intended to base his collateral attack, through state law proceeding rather than timely filing habeas petition).

Uncertainty works to the disadvantage of the party on whom the law places the burden of proof. On this record, we cannot find that Rios satisfied his burden of proving "that the extraordinary circumstances caused his petition to be untimely." *Baldayaque v. United States,* 338 F.3d 145, 153 (2d Cir.2003). Under these circumstances, Rios is not entitled to equitable tolling of the AEDPA's limitation period. As his petition for a writ of habeas corpus was therefore untimely, the district court's dismissal was appropriate.

The judgment is AFFIRMED.