GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE
Petitioner Virgilio Samo, currently an inmate at Sullivan Correctional Facility in Fallsburg, New York, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. See Amended Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, filed July 28, 2017 (Docket # 3) ("Pet."). The respondent, the superintendent at the Sullivan Correctional Facility, has moved to dismiss the petition as barred by the applicable statute of limitations.[1] For the reasons stated below, the respondent's motion should be granted.
I. BACKGROUND
A. Samo's Trial and Appeal
Samo was convicted of second-degree murder on July 1, 2008, after a jury trial in the Supreme Court of the State of New York, Bronx County. Chamoy Decl. ¶ 10. Samo was sentenced to an indeterminate prison term of from twenty-five years to life in prison. Pet. at *1;[2] Chamoy Decl. ¶ 12.
Represented by appointed counsel, Dawn M. Cardi, Samo appealed his conviction to the Appellate Division, First Department, of the Supreme Court of the State of New York. See People v. Samo, 124 A.D.3d 412, 1 N.Y.S.3d 45 (1st Dep't 2015) ; Brief for Defendant-Appellant, dated Dec. 3, 2012 (annexed as Ex. 2 to Chamoy Decl.) ("App. Brief"). The brief submitted by Cardi sought to overturn the verdict on nine grounds. App. Brief at 37-56. The First Department affirmed Samo's conviction and sentence. Its opinion reasoned as follows:
*554 The verdict was based on legally sufficient evidence and was not against the weight of the evidence. There is no basis for disturbing the jury's credibility determinations, including its resolution of any inconsistencies in testimony. Although the People's main witness was an accomplice in the crime, there was extensive evidence provided by nonaccomplice witnesses.
The court articulated a reasonable basis for the exercise of its discretion to have [petitioner] restrained during trial, and the restraint was justified by an essential state interest in courtroom security, specific to this defendant. The court based its decision on [petitioner's] threatening statements and actions only a few weeks earlier at a trial that had resulted in a mistrial. [Petitioner's] threatening behavior was serious, particularly when viewed in the context of belligerent and intimidating conduct by jointly tried codefendants, as well as courtroom spectators. The court minimized any prejudice by taking steps to prevent the jury from seeing [petitioner's] restraints, and by way of an instruction to the jury that defense counsel had requested.
The court properly denied [petitioner's] motion to preclude testimony regarding admissions he made to a fellow inmate while incarcerated on this case, and there was no violation of [petitioner's] right to counsel. The record supports the court's finding that the witness was not an agent of the government with regard to the prosecution of this defendant. Moreover, [petitioner] initiated the conversation and volunteered his statements.
The court properly denied, as untimely, [petitioner's] motion to suppress physical evidence recovered as the result of a search warrant. [Petitioner] had all the information necessary to make a motion to controvert the warrant much earlier in the proceedings. In any event, there was no prejudice because the objects recovered under the warrant added little or nothing to the People's case.
We find that [petitioner] received effective assistance of counsel under the state and federal standards.
[Petitioner] did not preserve his challenges to the prosecutor's summation, and we decline to review them in the interest of justice. As an alternative holding, we find no basis for reversal. We perceive no basis for reducing the sentence.
Samo, 124 A.D.3d at 412-13, 1 N.Y.S.3d 45 (citations omitted).
B. Application for Leave to Appeal
Following the Appellate Division ruling, Cardi submitted a letter to the New York Court of Appeals dated February 17, 2015, seeking leave to appeal. See Letter from Dawn M. Cardi to Andew W. Klein, dated Feb. 17, 2015 (annexed as Ex. 5 to Chamoy Decl.). On August 26, 2015, Associate Judge Abdus-Salaam of the New York Court of Appeals signed an order denying Samo's application for leave to appeal. See People v. Samo, 26 N.Y.3d 934, 17 N.Y.S.3d 97, 38 N.E.3d 843 (2015).
Samo contends that Cardi never sent him or told him about the order of the New York Court of Appeals denying his application for leave to appeal. See Letter from Virgilio Samo, dated June 26, 2017 (Docket # 1) ("Samo Letter"), at 1; Pet'r Mem. at 2-3. On March 22, 2017, more than two years after his application had been filed, an "S.D.U. inmate law clerk" wrote a letter to the Court of Appeals on Samo's behalf that apparently inquired into the status of Samo's application for leave to appeal. See Samo Letter at 2-3. A week later, on March 29, 2017, the Court of Appeals sent a letter to Samo informing him that his application for leave to appeal *555 had been denied on August 26, 2015. See Letter from Margaret N. Wood to Virgilio Samo, dated Mar. 29, 2017 (attached as Ex. A to Samo Letter) ("Wood Letter"). Samo does not state on what date he received this letter.
C. The Instant Petition
On June 26, 2017, Samo submitted the first filing in this case, which was a letter addressed to the Clerk of the Court that "request[ed] an extension with regard to filing [his] Federal Habeas Corpus Motion until September 28, 2017." See Samo Letter at 1. This letter was docketed as a petition for writ of habeas corpus, even though the letter did not set forth any claims. Id. The letter did, however, attach a copy of the March 29, 2017 letter from the New York Court of Appeals to Samo, as well as the Appellate Division's decision in his case. Id. Samo raised two reasons why he should receive an extension of the limitations period for § 2254 habeas petitions: (1) that he "ha[s] a history of mental health issues, which can be documented here at Sullivan, for which I take a myriad of medications," and (2) that his "appellate attorney had never (not at any time) notified [him] of the Court of Appeal's denial for leave to appeal." Samo Letter at 2.
Several days later, on June 29, 2017, Samo filed a motion in Bronx Supreme Court to vacate his conviction pursuant to N.Y. Crim. Proc. Law § 440.10(1)(h), alleging ineffective assistance of counsel. See Affidavit in Support, dated June 29, 2017 (annexed as Ex. B to Pet. at *19-32 of Pet. Attachment 1 ("Pet. Att. 1") ) (" Section 440.10 Motion"), at 6-7.[3]
On July 21, 2017, Samo gave an amended petition for writ of habeas corpus to prison officials, which was filed in this Court on July 28, 2017. See Pet. That document included a form petition for writ of habeas corpus in which Samo listed the same nine claims raised in his state court appellate brief. Pet. at 6. It also included a copy of Samo's appellate brief to the First Department, App. Brief (annexed as Ex. A to Pet. at *62-103 and to Pet. Att. 1 at *1-18), an affidavit supporting his Section 440.10 Motion, see Affidavit of Statement, dated June 29, 2017 (annexed as Ex. C to Pet. Att. 1 at *62), his Section 440.10 Motion, a letter from the office of Dawn M. Cardi concerning his state court appeal, see Letter from Ariadne Green to Virgilio Samo, dated Dec. 12, 2012 (annexed as Ex. B to Pet. Att. 1 at *59), and an excerpt of the respondent's state court appellate brief, see Respondent's Brief, undated (annexed as Ex. D to Pet. Att. 1 at *63-64).
On October 13, 2017, the respondent filed the instant motion seeking dismissal of the petition on statute of limitations grounds. See Notice of Mot.; Resp't Mem. Samo filed a response, the respondent filed a reply, and Samo filed a sur-reply. See Pet'r Mem.; Resp't Reply; Pet'r Sur-Reply.
II. GOVERNING LAW
28 U.S.C. § 2244(d)(1) provides: "[a] 1-year period of limitation shall apply to an application to a writ of habeas corpus by a person in custody pursuant to the judgment of a state court." While four possible dates govern when the limitations period begins to run, only one date applies here: "the date on which the judgment *556 became final by the conclusion of direct review or the expiration of the time for seeking such review." Id. § 2244(d)(1)(A). In Samo's case, that date was November 24, 2015, the deadline for the filing of a petition for writ of certiorari to the Supreme Court. See Warren v. Garvin, 219 F.3d 111, 112 (2d Cir. 2000) ("[Petitioner's] conviction became final ... on the expiration of his time to petition for certiorari in the Supreme Court of the United States."); Sup. Ct. R. 13.1 (allowing 90 days to petition for a writ of certiorari). Samo's petition to this Court was thus filed more than seven months late. Indeed, Samo does not contest that his petition falls outside the one-year limitations period of 28 U.S.C. § 2244(d)(1)(A). See Samo Letter at 1-3; Pet'r Mem. at 1; Pet'r Sur-Reply at 1.
Samo instead argues that the limitations period should be equitably tolled. Equitable tolling of a limitations period is available where a petitioner establishes "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Pace v. DiGuglielmo, 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005) ; accord Holland v. Florida, 560 U.S. 631, 649, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010). Circumstances that warrant tolling are "rare and exceptional." Baldayaque v. United States, 338 F.3d 145, 151 (2d Cir. 2003) (citation and internal quotation marks omitted). In judging whether a petitioner has satisfied the requirements for equitable tolling, "courts do not apply its requirements mechanistically," Harper v. Ercole, 648 F.3d 132, 136 (2d Cir. 2011) ; rather, the "exercise of a court's equity powers ... must be made on a case-by-case basis," Holland, 560 U.S. at 649-50, 130 S.Ct. 2549 (quoting Baggett v. Bullitt, 377 U.S. 360, 375, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964) ); accord Dillon v. Conway, 642 F.3d 358, 362 (2d Cir. 2011) (per curiam).
Whether the circumstance standing in a prisoner's way of filing a timely petition was "extraordinary" is judged by "how severe an obstacle it is for the prisoner endeavoring to comply with AEDPA's limitations period." Diaz v. Kelly, 515 F.3d 149, 154 (2d Cir. 2008) ; accord Harper, 648 F.3d at 137. "[M]edical conditions, whether physical or psychiatric, can manifest extraordinary circumstances, depending on the facts presented." Harper, 648 F.3d at 137 ; see also Bolarinwa v. Williams, 593 F.3d 226, 231 (2d Cir. 2010). But "mental illness does not toll a filing deadline per se." Bolarinwa, 593 F.3d at 232.
Even if a petitioner demonstrates that an "extraordinary circumstance" stood in his or her way of timely filing, a petitioner must also "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." Jenkins v. Greene, 630 F.3d 298, 303 (2d Cir. 2010) (quoting Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000) ). Reasonable diligence means "that [the petitioner] acted as diligently as reasonably could have been expected under the circumstances." Harper, 648 F.3d at 138-39 (internal quotation marks, alterations, and citation omitted).
III. DISCUSSION
As noted, Samo's deadline for filing his petition for writ of habeas corpus expired on November 24, 2016. We are doubtful that Samo's initial letter to the Court, dated June 26, 2017, constituted a petition for writ of habeas corpus inasmuch as it did not "contain[ ] allegations sufficient to support a [habeas] claim." See Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001). It *557 is not necessary to reach this question, however, because even this first filing came more than seven months after the expiration of the one-year deadline. The sole question before the Court is whether any portion of the time period can be equitably tolled.
We address next the two bases Samo raises for such tolling: his mental competence and his attorney's alleged failure to inform him that the Court of Appeals had denied his application for leave to appeal.
A. Mental Competence
Samo claims that he is "mentally disabled and lacks education or literacy"; that he "is computer illiterate" with "an I.Q. of less than 60"; "has severe mental issues for which he takes a myriad of medication"; and "has an education that does not exceed the sixth grade." Pet'r Mem. at 5; Pet'r Sur-Reply at 2. Lack of education and even actual illiteracy (let alone computer illiteracy) by themselves, however, do not suffice as "extraordinary circumstances." See Quezada v. Capra, 2015 WL 2130217, at *7 (S.D.N.Y. May 6, 2015) ("Lack of legal knowledge, lack of education, and pro se status are insufficient circumstances to justify equitable tolling."); accord Green v. Sheehan, 2014 WL 338832, at *6 (W.D.N.Y. Jan. 30, 2014) (citing cases); Nash v. McGinnis, 2005 WL 1719871, at *3 (S.D.N.Y. July 22, 2005) (citing cases).
As to Samo's other allegations regarding his mental capacity, Samo has not carried his burden under Bolarinwa, 593 F.3d at 232. As the Second Circuit explained in that case, "[t]he burden of demonstrating the appropriateness of equitable tolling for mental illness lies with the plaintiff; in order to carry this burden, she must offer a 'particularized description of how her condition adversely affected her capacity to function generally or in relationship to the pursuit of her rights.' " Id. (quoting Boos v. Runyon, 201 F.3d 178, 185 (2d Cir. 2000) ). To start with, we note that Samo's vague assertions of "mental issues" are belied to some degree by the record. First, a state pre-sentence report notes that in 1997 Samo had "denied [having] a psychiatric history." See Pre-Sentence Investigation Face Sheet, filed Sept. 29, 2017 (annexed as Ex. 1 to Chamoy Decl.), at 4. Second, he testified on his own behalf at his trial, see Chamoy Decl. ¶ 9, where he denied having any mental illness, id., and despite his allegedly low I.Q., testified to serving as head of the Bronx Latin Kings, id. In any event, Samo's allegations are conclusory and lacking in any detail or evidentiary support. Courts have routinely denied petitioners equitable tolling for similarly conclusory assertions of mental incapacity-some with significantly more documentation than in this case. See, e.g., Tuitt v. Martuscello, 2013 WL 5508385, at *13 (S.D.N.Y. Oct. 3, 2013) ("Petitioner simply makes a conclusory assertion that he suffered from PTSD; without more, this fails to meet Petitioner's burden to show entitlement to equitable tolling."); Smith v. Lee, 2013 WL 2467988, at *10 (S.D.N.Y. June 7, 2013) ("The assertion-made by both his sister and mother-that Smith took mental health medication is insufficient on its own to warrant equitable tolling.") (citing similar cases); De Los Santos v. Ercole, 2013 WL 1189474, at *5 (S.D.N.Y. Mar. 22, 2013) (where petitioner housed in prison psychiatric unit and prison unit for "mentally challenged inmates" submitted psychiatric records diagnosing him with mild retardation and major depression, petitioner was denied equitable tolling because he failed to show a "causal connection between [his] alleged mental illness and his inability to exercise his legal rights during the period for which he is seeking equitable tolling"); Victorial v. Burge, 477 F.Supp.2d 652, 654-55 (S.D.N.Y. 2007) ("[Petitioner] does not *558 demonstrate that he was incapacitated for any time period during the year in which he was to file his petition with the Court, but merely states that he has 'been diagnosed with a mental disorder' since 1997."); Torres v. Miller, 1999 WL 714349, at *8 (S.D.N.Y. Aug. 27, 1999) ("mere fact that Torres suffered with physical and mental ailments during the one-year period is insufficient to toll the one-year time period; Torres must show that these medical problems rendered him unable to pursue his legal rights during the relevant time period"); see also Rios v. Mazzuca, 78 Fed.Appx. 742, 744 (2d Cir. 2003) (summary order) (denying equitable tolling to petitioner with documented schizophrenia because "[petitioner's] conduct [ ] indicates that he was, to some extent, capable of investigating and pursuing legal avenues"). Thus, we reject Samo's assertion that his mental condition is an extraordinary circumstance that justifies equitable tolling.
B. Attorney Error
Samo contends that he asked his attorney, Dawn Cardi, to tell him about the outcome of his application for leave to appeal to the Court of Appeals, see Pet'r Mem. at 4, and that by failing to do so, Cardi "breache[d] [ ] the most sacred duties lawyers owe their clients" and "abandoned the client's cause without any communication," id. at 3, leaving him "completely unable to comply with the deadline," id. at 6. We note at the outset that Samo never contends that Cardi's appointment as his counsel included an obligation to file a federal habeas corpus petition. He has also not contended, let alone supplied any documentary evidence, that Cardi made any specific undertaking to inform him of the results of her effort to seek leave to appeal.
Nonetheless, we certainly accept that Cardi should have informed Samo of the results of the leave application. The respondent's attorney states that he spoke to Cardi, who told him that (1) it was the practice of her office to send a petitioner a letter informing him of the denial of a leave application, (2) that she has no record that would confirm that such a letter was sent, and (3) that neither she nor any of the attorneys who worked on Samo's appeal could specifically recall whether they sent Samo a letter. In light of this equivocal evidence, we will assume without deciding that Cardi did not send a letter since it makes no difference to the outcome of the case.
We first address whether Cardi's alleged conduct constitutes "extraordinary circumstances" and then whether Samo acted with "reasonable diligence."
1. Extraordinary Circumstances
As the Second Circuit has noted, it has "established only a limited number of circumstances that may merit equitable tolling, such as where an attorney's conduct is so outrageous and incompetent that it is truly extraordinary." Doe v. Menefee, 391 F.3d 147, 159 (2d Cir. 2004). Thus, "attorney error normally will not constitute the extraordinary circumstances required to toll the AEDPA limitations period." Baldayaque, 338 F.3d at 152. Indeed, the Supreme Court has squarely held that "an attorney's negligence ... does not provide a basis for tolling a statutory time limit." Maples v. Thomas, 565 U.S. 266, 282, 132 S.Ct. 912, 181 L.Ed.2d 807 (2012) ; accord Holland, 560 U.S. at 651-52, 130 S.Ct. 2549 ("We have previously held that 'a garden variety claim of excusable neglect,' ... does not warrant equitable tolling.") (citation omitted); Sandvik v. United States, 177 F.3d 1269, 1270 (11th Cir. 1999) (per curiam) ("[M]ere attorney negligence ... is not a basis for equitable tolling.").
Attorney negligence may constitute an extraordinary circumstance when it is "so egregious as to amount to an effective abandonment of the attorney-client *559 relationship." Martinez v. Superintendent of E. Corr. Facility, 806 F.3d 27, 31 (2d Cir. 2015) (citation omitted). Instances of attorney misconduct that have been deemed sufficiently "extraordinary" include an attorney's abandonment of an appeal mid-process resulting in procedural default, see Maples, 565 U.S. at 274-75, 132 S.Ct. 912 ; a court-appointed attorney's failure to file a timely petition for habeas relief despite a series of letters from the client noting the importance of the deadline and citing the applicable legal rules, see Holland, 560 U.S. at 652, 130 S.Ct. 2549 ; an attorney retained for post-conviction relief who "did virtually nothing for almost a year," despite many requests for updates from the client who was eventually forced to file a pro se appeal, Martinez, 806 F.3d at 29-30 ; an attorney who miscalculated the last date for filing a timely habeas petition despite repeated requests from the client that the lawyer file well in advance of it to avoid just that result, Dillon, 642 F.3d at 363-64 ; and an attorney who told his client, after performing no legal research, that the time to file a habeas petition had passed, even though fourteen months remained, and who additionally failed to communicate with the client despite the client's efforts to reach him, Baldayaque, 338 F.3d at 152.
While these situations are appropriately characterized as reflecting behavior "so outrageous or so incompetent as to render it extraordinary," id., they are obviously not in the same category as a failure to send a letter informing a client that an order was issued denying leave to appeal. The attorney conduct alleged here strongly resembles the situation in Rodriguez v. Marshall, 2009 WL 1424260 (E.D. Cal. May 20, 2009). In Rodriguez, appellate counsel failed to notify a petitioner that his petition for review was denied by the California Supreme Court, despite telling petitioner that he would be kept informed. Id. at *3. As a result, the petitioner filed a writ of habeas corpus four months after the one-year deadline. See Rodriguez v. Marshall, 234 Fed.Appx. 746 (9th Cir. 2007). Nonetheless, Rodriguez ruled that the appellate counsel's failure qualified as "nothing more than simple, ordinary negligence on the part of appellate counsel." 2009 WL 1424260 at *6. In so ruling, it noted:
Counsel did not deceive or lie to Petitioner. Counsel did not act to thwart Petitioner in his filing of his federal petition. Counsel did not commit bad acts such as those noted in the cases which were deemed sufficiently egregious. Rather, appellate counsel made an error of omission.
Id. Rodriguez thus concluded that the petitioner had not shown "extraordinary circumstances" warranting equitable tolling.
A number of other cases have similarly concluded that where an attorney fails to inform a client that an event has occurred triggering a limitations period, the attorney's failure does not meet the threshold showing of "extraordinary circumstances." See, e.g., LaCava v. Kyler, 398 F.3d 271, 276 (3d Cir. 2005) (lack of notice from petitioner's state appellate attorney that his request to appeal had been denied did not amount to an extraordinary circumstance); Kitchen v. Danials, 2016 WL 4545331, at *3 (N.D. Ala. Aug. 9, 2016) ("[An] allegation that appellate counsel failed to inform Petitioner that the Alabama Supreme Court had quashed the writ of certiorari and entered a certificate of judgment is not the type of egregious attorney conduct required to apply equitable tolling. Rather, this is a description of mere negligence.") (citing cases); Menjivar v. Frauenheim, 2015 WL 2398560, at *3 (N.D. Cal. May 19, 2015) (petitioner not entitled to equitable tolling "where counsel did not inform him that his conviction had been affirmed on direct appeal") (citing *560 cases); Bobadilla v. Gipson, 2014 WL 3895992, at *4 (C.D. Cal. June 30, 2014) ("appellate counsel's actions in failing to inform Petitioner of the denial of his petition for review and to return the case records until approximately one year after the [California Supreme Court] decision were not so egregious as to constitute an extraordinary circumstance"); Anguiano-Magana v. Franke, 2012 WL 6203163, at *3 (D. Or. Nov. 14, 2012) ("Here, even assuming counsel was negligent in failing to advise Anguiano-Magana that final judgment had been entered and notify him of the AEDPA's one-year statute of limitations, such negligence is not sufficiently egregious to meet the 'extraordinary misconduct' standard upon which equitable tolling is based."); Sumpter v. Sears, 2011 WL 31188, at *5 (E.D.N.Y. Jan. 5, 2011) ("equitable tolling is not triggered by an appellate lawyer's failure to inform his client that his application for leave to appeal has been denied.") (citing McCowen v. Conway, 2008 WL 123940, at *4-5 (E.D.N.Y. Jan. 10, 2008) ).
We are aware of two cases in this Circuit that have found "extraordinary circumstances" based on an attorney's failure to inform a prisoner of the outcome of a state court decision. See Vasquez v. Greiner, 68 F.Supp.2d 307, 310 (S.D.N.Y. 1999) (finding that attorney's failure to notify prisoner of New York Court of Appeal ruling was an extraordinary circumstance but that further factual inquiry would be necessary on issue of prisoner's diligence); Baskin v. United States, 998 F.Supp. 188, 189 (D. Conn. 1998) ("It would be grossly inequitable to bar petitioner's ineffective assistance of counsel claim on the basis that counsel's error permitted the statute of limitations to run."). Vasquez and Baskin, however, were decided before the Second Circuit's rulings in Baldayaque and Dillon, which made clear that equitable tolling is warranted when attorney misconduct is "so outrageous or so incompetent as to render it extraordinary." Dillon, 642 F.3d at 363 (citation omitted); Baldayaque, 338 F.3d at 152. Baldayaque and Dillon are important because they show the high bar required for such a finding. Baldayaque involved an attorney who willfully ignored the express instructions of his client, did not conduct any legal research on his client's behalf, and never spoke to or met with his client. 338 F.3d at 152. In Dillon, which the Second Circuit characterized as a "close" case, the attorney "in effect admitted affirmatively and knowingly misleading" his client "by promising him that he would file the petition" by a particular date, and "breached that promise when he failed to follow his client's instruction, with disastrous consequences that [the client] could neither have foreseen nor prevented." 642 F.3d at 362, 364 (emphasis omitted). We thus believe that Vasquez and Baskin incorrectly concluded that the mere failure by an attorney to send a copy of a court decision entails an "extraordinary circumstance."
In sum, Samo has not shown that there existed an "extraordinary circumstance" that prevented his filing a timely petition for writ of habeas corpus.
2. Reasonable Diligence
In any event, even if we concluded that Cardi's failure amounted to an extraordinary circumstance, we could not find that Samo "acted with reasonable diligence throughout the period he seeks to toll." Doe, 391 F.3d at 159 (internal quotation marks and citation omitted).
Samo was aware that his attorney had filed the leave application in February 2015, see Samo Letter at 1; see also Letter from Dawn M. Cardi to Hon. Jonathan Lippman, dated Feb. 17, 2015 (annexed as Ex. 5 to Chamoy Decl.). Samo never alleges, however, that he took any action to find out the disposition of the application-such as by inquiring of Cardi or of the New *561 York Court of Appeals-until March 22, 2017, a period of more than two years. If measured from the date of the disposal of his leave application, on August 26, 2015, his period of complete inaction was more than 18 months. In light of this lapse of time-which is by itself more than the entire limitations period for a habeas corpus petition-we do not see how Samo has met his burden of showing that he "diligently pursued his application during the time that he seeks to have tolled." Doe, 391 F.3d at 175.
Samo's position is that he was under no obligation to take any action but instead could simply wait to hear from his attorney as to the disposition of the application. See, e.g., Pet'r Mem. at 6 ("[Samo] could not be expected to personally monitor the status of his case."). But unlike the petitioners in Holland, 560 U.S. at 651, 130 S.Ct. 2549 ; 32; Dillon, 642 F.3d at 363-64 ; and Baldayaque, 338 F.3d at 152 -all cases cited by Samo, see Pet'r Mem. at 1-4; Pet'r Sur-Reply at 2-Samo did not retain an attorney who was responsible for filing the document for which he seeks to toll the statute of limitations-that is, the habeas corpus petition. In other words, Samo, not his attorney, was responsible for complying with the one-year deadline. In light of this responsibility, it is reasonable to expect that Samo would make at least some effort within a year of the filing of the leave application to learn of the status of his request.
Samo cites to Wims v. United States, 225 F.3d 186, 190 (2d Cir. 2000), for the principle that the diligence requirement "is construed in light of a habeas petitioner's confinement in prison and any special restrictions that incarceration might impose on such a person," Pet'r Mem. at 5. We agree that we must so construe his obligation. In Samo's case, however, Samo made no efforts during the time period at issue. The diligence requirement at least requires that a prisoner act reasonably in accessing those resources that are available to him. But Samo makes no claim to have accessed these resources either by contacting Cardi or by writing to the Court of Appeals in the two year period after Samo knew his petition had been filed. Notably, when Samo did make inquiry by means of a letter to the New York Court of Appeals, he learned of the result within a week. Accordingly, we believe that Samo, "acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." Valverde, 224 F.3d at 134.[4]
Case law supports the view that Samo, even as a prisoner, had to take some action to meet the "reasonable diligence" requirement. In Plowden v. Romine, 78 F.Supp.2d 115 (E.D.N.Y. 1999), for example, the petitioner was in precisely the same situation as Samo. Plowden had an attorney who applied for leave to appeal to the New York Court of Appeals on his behalf but failed to inform Plowden of the decision denying leave. Id. at 116. Plowden took no action to determine the disposition of his leave application until 17 months after it was filed. Id. at 119. The court found that Plowden had not acted with reasonable diligence, stating
it was not reasonable for Plowden to allow more than seventeen months to elapse from February 13, 1997, the date on which he sought leave to appeal to the Court of Appeals, [to] July 21, 1998, *562 the date on which he wrote to inquire as to the status of his leave request. Plowden does not allege that there was any impediment to his inquiring during that time.
Id. The court also noted that Plowden did not allege "that he ever contacted his attorney to check on the status of his case during this seventeen-month period." Id. The same is true here: nothing stopped Samo from writing the Court of Appeals earlier and there is no evidence he ever contacted Cardi to find out the disposition of his leave application. Plowden stated:
There is no limiting principle to Plowden's argument that simple ignorance-absent any showing of diligence on his part or allegations of impediments to his staying informed about his case-should provide a basis for equitable tolling; "[t]o hold that the statute of limitations should be extended in this case would allow the statute to be extended indefinitely." Balagula v. United States, 73 F.Supp.2d 287, 290 (E.D.N.Y. 1999). Such an outcome would defeat the court's duty to "take seriously Congress's desire to accelerate the federal habeas process." Torres, 1999 WL 714349, at *6....
78 F.Supp.2d at 120 (citation omitted). Plowden concluded that it would not be justified in "us[ing] equitable principles to set aside a Congressionally-prescribed statute of limitations." Id. The facts of this case are essentially indistinguishable from those in Plowden and dictate the same result.
Another almost identical factual scenario arose in Mathews v. Ercole, 2009 WL 2340671, (E.D.N.Y. July 29, 2009), where the petitioner took no action during the 15-month period after the Court of Appeals denied leave to appeal. Id. at *1. Mathews denied equitable tolling, stating:
Petitioner attributes his inactivity to his inability to gain access to a law library, but he did not need a law library to do what he ultimately did-writing a letter to his attorney and/or to the New York Court of Appeals. When he finally took these steps, both letters elicited relatively quick responses, and if done any time prior to the expiration of the limitations period, would have likely yielded the same or a greater window to enable a timely filing than in the cases cited above. A complete failure of inquiry to his attorney or the New York Court of Appeals concerning a simple motion for leave to appeal for more than 15 months does not constitute reasonable diligence.
Id.
Similarly, in Smith v. Roe, 1998 WL 657667 (C.D. Cal. June 8, 1998), the court found no equitable tolling in a case where the petitioner's attorney failed to notify petitioner that his petition for review in the California Supreme Court was denied, noting that the petitioner "does not assert that he made any inquiry to either his appellate attorney or directly to the California Supreme Court at any time ... regarding the status of his Petition for Review." Id. at *2-3.
The fact that Samo waited far longer than a year to take action runs afoul of the principle adopted by a number of courts, which "generally have found that periods of delay lasting for more than a year do not exhibit due diligence." Morton v. Ercole, 2010 WL 890036, at *2 (S.D.N.Y. Mar. 10, 2010) ; accord Rodriguez v. Smith, 2015 WL 5968837, at *7 (N.D.N.Y. Oct. 13, 2015) ("A period of delay greater than one year normally does not demonstrate due diligence."); Melendez v. United States, 2010 WL 1790415, at *3 (S.D.N.Y. May 5, 2010) ("it is reasonable to expect that sometime during the year Petitioner would check on the appeal status."); Marengo v. Conway, 342 F.Supp.2d 222, 230-31 (S.D.N.Y. 2004) (lack of notice from appellate *563 division insufficient basis for equitable tolling where petitioner waited 19 months to inquire into section 440.10 motion); Ferguson v. Mantello, 2000 WL 1721140, at *2 (S.D.N.Y. Nov. 16, 2000) (no equitable tolling where petitioner failed to contact counsel for 18 months about status of appeal); see also Herring v. Superintendent, 2010 WL 5463869, at *6 (S.D.N.Y. Dec. 2, 2010) (petitioner did not exhibit due diligence when he waited 11 months after notice of denial of leave to take any action).
For these reasons, we conclude that Samo did not "act[ ] with reasonable diligence throughout the period he seeks to toll." Doe, 391 F.3d at 159 (internal quotation marks and citation omitted). Thus, Samo's effort to obtain the benefit of equitable tolling should be rejected.
IV. CONCLUSION
For the foregoing reasons, the respondent's motion to dismiss (Docket # 9) should be granted.
PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION
Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file any objections. See also Fed. R. Civ. P. 6(a), (b), (d). A party may respond to any objections within 14 days after being served. Any objections and responses shall be filed with the Clerk of the Court, with copies sent to the Hon. Richard J. Sullivan at 500 Pearl Street, New York, New York 10007. Any request for an extension of time to file objections or responses must be directed to Judge Sullivan. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See 28 U.S.C. § 636(b)(1) ; Fed. R. Civ. P. 72 ; Fed. R. Civ. P. 6(a), 6(b), 6(d) ; Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985) ; Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).
SO ORDERED.

Notice of Motion, filed Sept. 29, 2017 (Docket # 9) ("Notice of Mot."); Memorandum of Law, filed Sept. 29, 2017 (Docket # 11) ("Resp't Mem."); Declaration of Noah J. Chamoy, filed Sept. 29, 2017 (Docket # 12) ("Chamoy Decl."); Petitioner's Sur-Reply to Respondent's Motion to Dismiss, filed Oct. 13, 2017 (Docket # 14) ("Pet'r Mem."); Reply Memorandum of Law in Support of Motion to Dismiss, filed Oct. 18, 2017 (Docket # 15) ("Resp't Reply"); Letter from Virgilio Samo, filed Oct. 26, 2017 (Docket # 17) ("Pet'r Sur-Reply").

*___ refers to the pagination provided by the Court's ECF system.

Samo's Section 440.10 motion was denied on November 27, 2017, by the Bronx Supreme Court. See People v. Samo, No. 32162C/2005 (attached to Letter from Noah J. Chamoy, dated Feb. 6, 2018 (Docket # 19) ("Chamoy Letter") ). On February 6, 2018, an Associate Justice of the Appellate Division, First Department, denied Samo's application for leave to appeal that decision. See Certificate Denying Leave, dated Jan. 18, 2018 (attached to Chamoy Letter).

Notably, even after receiving notice that his request for leave was denied, Samo still waited nearly 3 months to write a letter to this Court seeking equitable tolling of the statute of limitations. See Samo Letter. In the meantime, he filed a lengthy collateral attack on his state court conviction under N.Y. Crim. Proc. Law § 440.10(1)(h) on grounds of ineffective assistance of counsel. See Pet. at 4; Section 440.10 Motion.